CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
10/27/2021
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
          DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JUDY M. PAUL,<br>  Plaintiff,<br><br>v.<br><br><br>WESTERN EXPRESS, INC., et al.,<br>  Defendants. | Civil Case No. 6:20-cv-00051<br><br><br>By: Robert S. Ballou<br>United States Magistrate Judge |

## REPORT & RECOMMENDATION

This case arises from an August 2018 multi-vehicle accident in Rockbridge County, Virginia when Plaintiff Judy Paul ("Paul") was struck in the rear in a multi-vehicle accident as she either slowed or stopped on the highway because of hazardous driving conditions. Compl. ¶ 11–21. Paul's vehicle, a 2012 Kia Soul, was totaled in the accident. Dkt. 74–16.

Defendants Ervin Worthy and Western Express, Inc. ("Western Express") filed this motion for sanctions (Dkt. 73) claiming that Paul allowed the destruction of her vehicle before the parties had an opportunity to conduct a complete inspection of the vehicle and download the data from the vehicle's electronic control module (ECM). I find that the motion is premature as the present record is insufficient to establish that Paul's actions cause spoliation of any evidence. Accordingly, I **RECOMMEND DENYING** Western Express's motion without prejudice.

  I.  Factual Background

Paul alleges that this accident occurred when Defendant Roger Hiatt ("Hiatt") rear-ended Andre Le Doux ("Le Doux") who then struck the rear of Paul's 2012 Kia Soul. Compl. ¶ 13. Paul claims that she was then hit again by Defendant Ervin Worthy, a truck driver for Defendant Western Express. Compl. ¶ 15–17. Western Express disputes Paul's version of the crash

sequence, and the parties agree that determining the sequence of events in the accident, and the order and magnitude of impacts is important. Dkts. 30, 81.

Paul's insurance carrier, GEICO Advantage Insurance Company ("GEICO"), declared Paul's Kia a total loss, Dkt. 74–16, and on September 11, 2018, GEICO took possession of the Kia and placed it in storage at Insurance Auto Auctions ("IAA") in Culpepper, Virginia. Id.; Dkt. 78–2. Le Doux's Ford and Hiatt's Honda were also stored at IAA by their insurance carriers. Dkt. 74. While at IAA, the parties' insurance carriers controlled the vehicles, and IAA policy required that the carrier grant permission for all vehicle inspections. Dkt. 74–3.

Approximately one month after the accident, Paul, Worthy, and Western Express engaged counsel. Dkt. 74–1. Counsel for Worthy and Western Express, Ashley Winsky ("Winsky"), sent a litigation preservation letter to Paul's counsel, Stephen Huff ("Huff"), on September 21, 2018, advising him to preserve the Kia and requested an inspection. Dkt. 74–2.

Counsel for Paul, LeDoux, Hiatt, Worthy, and Western Express engaged in pre-litigation investigation of the accident to include an inspection of the vehicles in October 2018 to which the insurance carrier had agreed. See, e.g., Dkts. 74–3, –4, –7; Dkt. 78–5 (e-mail from Winsky to Huff requesting that he confirm permission for an inspection at IAA so that "we can photograph the [Kia] and perform a data download."). The October inspection date fell through as Paul's expert was unavailable. Dkt. 74. Eventually, the parties agreed to re-schedule the inspection of all three vehicles at IAA for November 2018. Counsel then set a November 2018 inspection for the three vehicles located at IAA. Dkts. 74–6, 74–7, 78–6.

On November 12, 2018, the date of the inspection, experts for Le Doux, Hiatt, Western Express, and Worthy presented at IAA. Paul's expert did not arrive on time due to an unforeseen scheduling conflict. Dkt. 77. The experts inspected the vehicles, successfully downloaded the

data from Hiatt's Honda, but were unable to retrieve any data from Le Doux's Ford due to a power control module reset. Later that afternoon, after the other experts left IAA, Christopher Borba, Paul's expert, arrived and photographed each vehicle. Dkt. 88. He did not attempt to download the Kia's data. Id.

Experts for Le Doux and Western Express and Worthy now disagree why data from Paul's Kia was not downloaded at the November 12, 2018 inspection. James Whelan, an expert for Western Express and Worthy, stated that he had no authority to download data from the Kia, but that such download would have been possible using a specific tool manufactured by Kia in 2013.[1] Dkt. 81–1. Heath Stewart, an expert for Le Doux, contends that the experts at the November 12 inspection discussed downloading data from the Kia at the time, but that they made "a mutual decision . . . not to attempt data retrieval" as the 2012 Kia "was not supported" by the 2013 tool. Dkt. 87. Regardless of the reasons why, no data download of the Kia occurred on November 12, 2018 – a fact known to all counsel and all experts.

After the November 12, 2018, inspection, there were no renewed efforts—by any party—to set a second inspection date to download the Kia's data. See, e.g., 77. Nor did any party communicate further interest to inspect the Kia before its destruction, which occurred approximately four months later in March 2019. Id.

Over a year later, in August 2020, Paul filed this action, and through discovery, Winsky sent Huff a letter seeking either the ECM data or a vehicle inspection. Dkt. 78–7. Huff responded that neither he nor his expert downloaded the data and that he was unsure of the Kia's present location. Dkt. 78–8. Later, it was determined that GEICO destroyed the vehicle in April 2019. Dkt. 74. Prior to destruction of the vehicle, GEICO sent a letter to Crandall & Katt asking

---

[1] The parties dispute whether Va. Code § 46.2-1088.6 prevents any person other than Paul's expert from downloading the vehicle data. That issue is not ripe for decision at this time.

whether the litigation hold remained in effect or if it had been lifted so that GEICO could continue with its claim. Dkt. 91-1. GEICO, thereafter, released the vehicle on April 15, 2019 from the hold so it could be sold. Dkt. 91-2.

II.     Legal Standard

"Spoliation refers to the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001) (citing West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999)). A party seeking spoliation sanctions bears the burden of proving spoliation and showing that the requested sanctions are warranted under governing law. Blue Sky Travel & Tours, LLC v. Al Tayyar, 606 Fed. App'x 689, 698 (4th Cir. 2015); Sampson v. City of Cambridge, 251 F.R.D. 172, 181 (D. Md. 2008); see also Steves & Sons, Inc. v. JELD–WEN, Inc., 327 F.R.D. 96, 104–05 (E.D. Va. 2018) (noting that while the burden of proof on a motion for spoliation sanctions remains unsettled, that "the general approach of courts in the Fourth Circuit has been to apply the clear and convincing evidence standard, especially where a relatively harsh sanction like an adverse inference is sought."). The moving party must establish three elements to show spoliation occurred:

> (1) [T]he party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a culpable state of mind; and (3) the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it. Furthermore, "a finding of 'relevance' for purposes of spoliation sanctions is a two-pronged finding of relevance and prejudice.

Goodman v. Praxair Servs., Inc., 632 F.Supp.2d 494, 509 (D. Md. 2009) (quoting Victor Stanley, Inc. v. Creative Pipe, Inc., 269 F.R.D. 497, 532 (D. Md. 2010)).

Once spoliation is found, it is well-established that "the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." Silvestri, 271 F.3d at 590. To impose either an adverse-inference instruction or dismissal as a sanction for spoliation, courts require an additional showing of fault or prejudice. See, e.g., Sampson v. City of Cambridge, 251 F.R.D. 172, 181 (D. Md. 2008) (citing Hodge v. Wal-Mart Stores, Inc., 360 F.3d 446, 450–51 (4th Cir. 2004)) (noting an adverse-inference instruction is only appropriate where the party seeking that sanction demonstrates that the spoliating party "acted either willfully or in bad faith in failing to preserve relevant evidence"); Silvestri, 271 F.3d at 593 (noting dismissal is appropriate only where the court "conclude[s] either (1) that the spoliator's conduct was so egregious as to amount to a forfeiture of his claim, or (2) that the effect of the spoliator's conduct was so prejudicial that it substantially denied the defendant the ability to defend the claim.").

III.    Analysis

Defendants Western Express and Worthy assert that the Kia's destruction has "irreparably harmed [their] defense" of this matter. I find that Defendants' motion for spoliation is premature given this case's present posture. I further find that there remain significant unanswered questions on this record.

As an initial matter, I find that a more developed record is necessary for a finding of spoliation. See Swindell Dressler Intern. Co. v. Travelers Cas. & Sur. Co., 827 F. Supp. 2d 498, 505–08 (W.D. Pa. 2011) (denying without prejudice spoliation motion on grounds that motion was premature); see also Taylor v. AFS Techs., Inc., No. CV-09-2576, 2010 WL 3283570, at *1 (D. Ariz. Aug. 18, 2010); Echavarria v. Am. Valet Parking Mgmt., Case No. 14–80770, 2015 WL 12746112, at *2 (S.D. Fla. June 17, 2015). This litigation is in its early stages. Trial of this

matter is set one year from now and the discovery period remains open for approximately nine months. Dkt. 79. The parties have exchanged some written discovery, but substantial discovery remains: the parties have neither engaged in expert discovery nor deposed fact witnesses.

A developed factual record will invariably inform the court's analysis. As a general matter, the significant discovery remaining prevents me from properly examining relevance and, by extension, prejudice. See Ackerson v. Rector & Visitors of Univ. of Va., No. 3:17-CV-00011, 2018 WL 3097334 (W.D. Va. June 22, 2018) (citing Victor Stanley, Inc., 269 F.R.D. at 531) ("The relevancy inquiry is 'a two-pronged finding of relevance and prejudice.'"). For example, Defendants Western Express and Worthy contend that the Kia was the key piece of evidence in this case and the only source of evidence that could determine:

> [W]hether the Kia was fully stopped at the time of the first impact or, if not, its speed at that time; whether the Kia's brakes were engaged; the Kia's engine's revolutions per minute at the time of impact; how many times the Kia was struck; the severity of the impacts; and the time elapsed between the impacts.

Dkt. 81, p. 8–9. While further discovery may establish that the Kia was the sole source of such information, this is not yet the case. It is entirely possible that this or similar evidence could still be obtained through the testimony of fact witnesses, photographs of the vehicles, data downloads from Worthy's tractor-trailer and Hiatt's Honda, post-accident reports, and accident reconstruction. Thus, while the Kia may have resolved certain issues, it appears that there may be other probative evidence upon which the Defendants may rely.[2] See, e.g., Musick v. Dorel Juvenile Grp., Inc., No. 1:11CV00005, 2011 WL 5029802, at *3 (W.D. Va. Oct. 24, 2011) ("The

---

[2] Defendants argue that this case is like Silvestri v. Gen. Motors Corp. and other cases where "the sole piece of evidence" was spoliated. 271 F.3d 583 (4th Cir. 2001); see also King v. Am. Power Conversion Corp., 181 Fed. App'x 373 (4th Cir. 2006); Nautilus Ins. Co. v. Appalachian Power Co., No. 7:19-cv-00380, 2021 WL 1321319 (W.D. Va. Apr. 8, 2021). These cases are distinguishable on multiple grounds, but for the purpose of the present analysis, it is worth noting that while the Kia undoubtedly was an important piece of evidence, it is not the "only evidence from which [the defendant] could develop its defenses adequately," as was the case in Silvestri, King, and Nautilus.

availability of other evidence to the moving party is an appropriate ground for denying a request for entry of judgment on the ground of spoliation."); Collazo-Santiago v. Toyota Motor Corp., 149 F.3d 23, 29 (1st Cir. 1998) (finding dismissal inappropriate when "the defendant identified a number of issues relevant to its defense that inspection of the vehicle may have resolved. However, evidence as to many of these issues could have also been obtained through other means").

Furthermore, there is disagreement among the parties' experts relating to whether data from the Kia was recoverable and, if so, whether such data would be reliable. The amount of data recoverable and its reliability will shape this court's spoliation analysis. For instance, Paul's counsel and expert's understanding regarding the potential recovery and reliability of the Kia's ECM data could inform as to Paul's ultimate culpability. See, e.g., U.S. Equal Employment Opportunity Comm'n v. Wedco, Inc., No. 3:12–cv–00523, 2014 WL 4635678, at *5 (D. Nev. Sept. 15, 2014) (considering party's belief regarding the "intrinsic value" of the spoliated evidence).

Further, while Defendants are correct that admissibility is not evaluated at the discovery phase of litigation, questions about the information on the Kia's ECM and whether that data was recoverable or reliable will inform the court's relevance analysis. Though usually in the video surveillance context, courts often consider in their relevance analysis whether technology captured particular data prior to spoliation. See Eller v. Prince George's Cnty. Pub. Sch., Case No. TDC-18-3649, 2020 WL 7336730, at *6 n.7 (D. Md. Dec. 14, 2020) (considering whether surveillance footage captured incident); Simoes v. Target Corp., No. 11 CV 2032, 2013 WL 2948083, at *6–7 (E.D.N.Y. June 14, 2013) (same); see also UMG Recordings, Inc. v. Grande Comm. Networks, LLC, No. A-17-CA-365-LY, 2019 WL 4738915, at *4 (W.D. Tex. Sept. 27,

2019) (considering whether software was designed to retain certain data); Wright v. Nat'l Interstate Ins. Co., No. 16-16214, 2017 WL 4011206, at *3 (E.D. La. Sept. 12, 2017). Similarly, just because certain additional testing of the Kia is no longer possible does not necessarily result in a finding of spoliation. See Cedar Petrochemicals, Inc., v. Dongbu Hannong Chemical Co., Ltd., 769 F. Supp. 2d 269, 292–94 (S.D.N.Y. 2011) (finding no spoliation and noting that while additional testing was possible that defendants failed "to prove that additional tests . . . would show anything."). Further expert discovery will likely address these open questions.

While the destruction of the Kia is certainly significant and the potential fact that Plaintiff was aware that GEICO was about to release the vehicle from a litigation hold, Defendants do not presently carry their burden. See Sampson v. City of Cambridge, 251 F.R.D. at 180 (D. Md. 2008) ("The burden is on the aggrieved party to establish a reasonable possibility, based on concrete evidence, rather than a fertile imagination, that access to the lost material would have produced evidence favorable to his cause."). Findings of spoliation require a substantial factual record and given the remaining discovery in this case and unanswered questions on the record, it is proper to defer this issue.

Accordingly, I **RECOMMEND DENYING** Defendants' motion for sanctions (Dkt. 73) without prejudice.

The Clerk is directed to transmit the record in this case to Norman K. Moon, Senior United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the

parties. Failure to file specific objections pursuant 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Entered: October 27, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge