CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
3/21/2022
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
       DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JUDY M. PAUL,<br><br>                               *Plaintiff,*<br><br>v.<br><br>WESTERN EXPRESS, INC.,<br><br>                              *Defendant.* | CASE NO.   6:20cv00051<br><br>MEMORANDUM OPINION<br>& ORDER<br><br>JUDGE NORMAN K. MOON |

      This matter comes before the Court on Defendants Ervin Worthy and Western Express's objections (Dkt. 96) to Magistrate Judge Ballou's Report & Recommendation (Dkt. 93) on Defendants' motion for sanctions for spoliation (Dkt. 73).

      Finding the record incomplete to rule on the motion at this point in discovery, the Court will overrule Defendants' objections, adopt the R&R, and deny Defendants' motion for sanctions without prejudice.

### I. Background

      This case arises from an August 2018 multi-vehicle car crash in Rockbridge County, Virginia, when, according to the complaint, Roger Hiatt rear-ended Plaintiff Andre Le Doux, who then struck Plaintiff Judy Paul. (Dkt. 1 at ¶¶ 11–21). Defendant Ervin Worthy, a truck driver for Defendant Western Express, then also struck Paul. (*Id.* at ¶¶ 15–17). Defendants dispute the sequence of events. (Dkt. 30, 81).

      Paul's insurance carrier, GEICO Advantage Insurance Company, declared Paul's car, a 2012 Kia Soul, a total loss, and took possession of the car a few weeks after the crash, on September 11, 2018. (Ex. 16 to Dkt. 74; Ex. 2 to Dkt. 78). GEICO stored the Kia at Insurance Auto Auctions (IAA), a storage site in Culpeper, VA. (Dkt. 74). Le Doux's and Hiatt's vehicles

1

were also stored at IAA by their insurance carriers. (*Id.*). The parties' insurance carriers controlled the vehicles while they were stored at IAA, and IAA policy required that the carriers grant permission for all vehicle inspections while the vehicle was under the carriers' control. (Ex. 3 to Dkt. 74).

The parties engaged counsel in the weeks following the crash. (Ex. 1 to Dkt. 74). On September 21, 2018, Ashley Winsky, counsel for Worthy and Western Express, sent a litigation preservation letter to Stephen Huff, counsel for Paul, which advised Paul to preserve the Kia and requested an inspection of the Kia. (Ex. 2 to Dkt. 74). In a subsequent letter, Winsky requested that Huff "[p]lease confirm that you will notify the shop that we can photograph the vehicle and perform a data download." (Ex. 5 to Dkt. 78). Huff responded with a letter stating that GEICO had ownership of the Kia and had "hired IAA to sell the subject vehicle at auction following the settlement of the vehicle's insurance claim," and directed Winsky to "[p]lease direct any and all requests that you have the regarding the subject vehicle, including any inspections, directly to GEICO, who in turn will instruct IAA on how it wants the subject vehicle handled in writing." (Ex. 2 to Dkt. 78).

The parties (including Paul, Le Doux, Hiatt, Worhty, and Western Express) agreed to schedule an inspection of the vehicles. (Ex. 6, 7 to Dkt. 74; Ex. 6 to Dkt. 78). After the first scheduled inspection date in October 2018 fell through, the parties agreed to reschedule the inspection of all three vehicles for November 12, 2018. (Dkt. 74 at 4). On that day, experts for Le Doux, Hiatt, Worthy, and Western Express appeared at IAA, but Paul's expert did not arrive on time due to a scheduling conflict. (Dkt. 74 at 4; Dkt. 77 at 5). The experts who were present inspected the vehicles and attempted to download data from Hiatt's and Le Doux's vehicles. (Dkt. 74 at 4). They successfully download the data from Hiatt's but were unable to from Le

Doux's because of a power control module reset. (*Id.*). The next day, Paul's expert, Christopher Borba, went to IAA and photographed the vehicles. (Ex. 13 to Dkt. 74; Dkt. 74 at 5). He did not attempt to download the Kia's data. (Dkt. 74 at 5).

The experts who were present at IAA on November 12, 2018 disagree about why they did not download Paul's Kia's data. The expert for Western Express and Worthy claims that he had no authority to download the data from the Kia but claims that it would have been possible to download the data using a specific tool manufactured by Kia. (Ex. 1 to Dkt. 81 at 2–3). Le Doux's expert contends that the experts discussed downloading data from the Kia at the time, but that they made a "mutual decision" not to attempt to recover the date because the Kia was not supported by the tool. (Dkt. 87 at 3). Regardless, no one downloaded data from the Kia on November 12, 2018.

GEICO sold the Kia in April 2019 (Ex. 2 to Dkt. 91), and it was destroyed sometime thereafter (Dkt. 74 at 5; Dkt. 77 at 7).

Paul filed the current action in August 2020. (Dkt. 1).

No party made any further attempt to set a second inspection date for the Kia after November 12, 2018, nor did the parties communicate further about the vehicle, until October 2020. (Ex. 7 to Dkt. 78). At that time, Winsky asked Huff whether Paul's expert had conducted a data download on the Kia, and whether the vehicle was still in storage. (*Id.*).

Now, Defendants move for sanctions against Paul for failing to preserve the Kia. (Dkt. 73). They ask for dismissal of the complaint, or, in the alternative, an adverse inference. (Dkt. 74 at 11). The motion was referred to Magistrate Judge Ballou for a R&R. Judge Ballou recommends denying the motion without prejudice because the issue is not yet ripe for determination, because discovery is still ongoing, and the record is not complete enough to

determine important portions of the analysis for whether sanctions are appropriate, including the exact relevance of the lost evidence and the prejudice to Defendants. (Dkt. 93).

Defendants object to the R&R, arguing that the present record is sufficient to support a finding of spoliation. (Dkt. 96).

## II.  Standard

"Spoliation" means "the destruction or material alteration of evidence or . . . the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors. Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). Federal courts have two sources of authority to issue sanctions due to spoliation: first, under Fed. R. Civ. P. 37 when a party commits spoliation in violation of a specific court order, and second, under the court's inherent authority to control the judicial process. *Sampson v. City of Cambridge, Md.*, 251 F.R.D. 172, 178 (D. Md. 2008). A party seeking sanctions based on spoliation must establish three elements:

> (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*Id.* at 179 (citing *Zubulake v. UBS Warburg LLC (Zubulake IV)*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003)). For purposes of spoliation, a finding of "relevance" is a two-prong analysis of relevance and prejudice. *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 532 (D. Md. 2010). This standard applies regardless of the remedy that the moving party seeks for the alleged spoliation. *Id.*

If spoliation is found, the Court must fashion an appropriate remedy. "[T]he applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying

the spoliation doctrine." *Silvestri*, 271 F.3d at 590. The appropriate remedy depends on the spoliating party's exact "culpable state of mind": ordinary negligence, gross negligence, or bad faith. *Sampson*, 251 F.R.D. at 179. To impose either an adverse inference instruction or dismissal as a sanction for spoliation, the moving party must show that the spoliating party acted willfully or in bad faith. *See Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450–51 (4th Cir. 2004) (noting an adverse-inference instruction is only appropriate where the party seeking that sanction demonstrates that the spoliating party "acted either willfully or in bad faith in failing to preserve relevant evidence"); *see also Silvestri*, 271 F.3d at 593 (noting severe sanctions only appropriate where the court "conclude[s] either (1) that the spoliator's conduct was so egregious as to amount to a forfeiture of his claim, or (2) that the effect of the spoliator's conduct was so prejudicial that it substantially denied the defendant the ability to defend the claim.").

A party seeking spoliation sanctions bears the burden of proving spoliation and showing that the requested sanctions are warranted under governing law. *Blue Sky Travel & Tours, LLC v. Al Tayyar*, 606 Fed. App'x 689, 698 (4th Cir. 2015); *see also Steves & Sons, Inc. v. JELD–WEN, Inc.*, 327 F.R.D. 96, 104–05 (E.D. Va. 2018) (noting that while the burden of proof on a motion for spoliation sanctions remains unsettled, that "the general approach of courts in the Fourth Circuit has been to apply the clear and convincing evidence standard, especially where a relatively harsh sanction like an adverse inference is sought.")

### III.  Analysis

At this point in the case, when trial is still over a year away and the parties have not completed discovery, this motion is premature. The record is insufficient to decide the exact relevance of the Kia and the prejudice of its loss to Defendants, which will ultimately guide the Court on whether to impose sanctions. *See Victor Stanley*, 269 F.R.D. at 532.

Defendants contend that the data from the Kia was the only piece of evidence that could establish:

> [W]hether the Kia was fully stopped at the time of the first impact or, if not, its speed at that time; whether the Kia's brakes were engaged; the Kia's engine's revolutions per minute at the time of impact; how many times the Kia was struck; the severity of the impacts; and the time elapsed between the impacts.

Dkt. 81 at 8–9.

As Judge Ballou noted in the R&R, it is possible that the data from the Kia may have been the only source for this evidence, but it is also possible that similar evidence could be obtained through fact witnesses, photographs, data downloads from the other parties' cars, post-accident reports, and accident reconstruction. (Dkt. 96 at 6). If there is other evidence that serves the same purpose as the data download from the Kia, then there is no prejudice to Defendants, and there would be no basis for sanctions, so the Court will wait to see if such evidence emerges during the completion of discovery.

In addition, the Court has serious questions about whether Defendants can meet their burden to show that Plaintiff's conduct was willful such that an adverse inference instruction is warranted, but the Court will reserve final judgment until the record is more developed.

## IV.  Conclusion

For the reasons stated, the Court will OVERRULE Defendants' objections (Dkt. 96), ADOPT the R&R (Dkt. 93), and DENY without prejudice Defendants' motion for sanctions (Dkt. 73). It is so ORDERED.

The Clerk of Court is directed to send a copy of this order to all counsel of record.

Entered this 21st day of March 2022.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE