IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | |
|---|---|
| **ANDRE G.H. LE DOUX V** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No.: 6:20-cv-052 |
| ) | |
| **WESTERN EXPRESS, INC.** and ) | |
| **ERVIN JOSEPH WORTHY** ) | |
| ) | |
| **Defendants.** ) | |

**PLAINTIFF ANDRE G.H. LE DOUX V'S MEMORANDUM IN SUPPORT OF HIS MOTION TO EXCLUDE THE OPINIONS OF DEFENDANTS' ACCIDENT RECONSTRUCTION EXPERT JAMES D. WHELAN ON THE STANDARD OF CARE FOR COMMERCIAL MOTOR VEHICLE OPERATION.**

Plaintiff Andre G.H. Le Doux V, ("Plaintiff"), by counsel, submits his Memorandum in Support of His Motion to Exclude the Opinions of Defendants' Accident Reconstruction Expert James D. Whelan on the Standard of Care for Commercial Motor Vehicle Operation. In support thereof, Plaintiff states as follows:

**INTRODUCTION AND RELEVANT BACKGROUND**

On August 11, 2018, Plaintiff Andre Le Doux was operating his Ford Econoline E250 work van in the southbound left lane of Interstate 81 in Rockbridge County, Virginia. Traveling in front of him was a silver Kia Soul, a subcompact crossover, operated by Judy Paul.

Traffic ahead of Mrs. Paul and Mr. Le Doux was stopping or had stopped in response to an earlier crash ahead, as well as reduced visibility and traction resulting from the hazardous rain and mist. Mrs. Paul and Mr. Le Doux slowed their speed and were stopping, or had stopped their vehicles along with other motorists, including other Commercial Motor Vehicle (CMV) operators

that had stopped their tractor trailers without crashing into anyone, as shown by the actual forward looking camera from the defendant's tractor, and other photographic evidence, both supported by eyewitness testimony.

As Mr. Le Doux was slowing to a stop or stopped, his Ford work van was struck in the rear by a white Honda minivan operated by Mr. Roger Hiatt. This minor impact pushed Mr. Le Doux's van into the rear of Mrs. Paul's Kia Soul. Mr. Le Doux's Ford Econoline remained on the roadway along with other stopped vehicles, while Mrs. Paul's Kia Soul was stopped in the grass median next to the interstate. Mr. Hiatt lost control of his Honda van after the impact and left the roadway. Mr. Hiatt's vehicle was not further involved.

After the vehicles involved in this minor impact sequence came to rest, the separate and distinct high velocity tractor-trailer crash occurred that is the subject of this litigation. At the time of the subject high velocity tractor-trailer crash, Defendant Worthy, a professional commercial truck driver, was operating a 2018 International tractor and hauling a trailer in furtherance of the interest of Defendant Western Express, Inc. ("Western Express"). The electronic data downloaded from Defendant Worthy's tractor-trailer showed that Mr. Worthy left the Pilot station, 20.6 miles north of the collision site, traveling with **the tractor's Adaptive Cruise Control (ACC) on and set to 65 mph, the tractor's maximum governed speed**. During this time, Defendant Worthy received numerous lane departure warnings from the tractor's on-board electronic warning system. Despite this, he never disengaged the cruise control nor reduced its set speed. Doppler radar weather images, confirmed by deposition testimony, establish that this entire section of I-81 was experiencing rain which increased over time to heavy rain as Defendant Worthy was approaching the subject stopped traffic. In fact, Defendant Worthy admitted in deposition that he had only 15 to 20 feet of visibility as he travelled down the highway, operating with his vehicle's cruise control

set for the tractor's maximum speed. Despite these **hazardous conditions**, Defendant Worthy failed to comply with Federal Motor Carrier Safety regulations. These safety regulations mandated that he reduce his speed in these hazardous conditions and **exercise extreme caution**. Defendant Worthy intentionally ignored the specialized safety training he had received that warned him of this very hazard and prohibited this very conduct. Remarkably, not only was Defendant Worthy operating the heavy tractor-trailer at its maximum speed with forward vision limited to 15 to 20 feet by the rain and mist, but he chose to further limit his forward vision by mounting his personal computer tablet by suction cup to the windshield of his tractor, directly in his line of sight. This choice was yet another intentional violation of specific Federal Motor Carrier Safety Regulations.

Defendant Worthy plowed through these hazardous conditions of rain and mist and limited visibility over a heavily-trafficked interstate highway with increasingly reduced traction. Not surprisingly, and in fact, predictably to a trained professional CMV Operator, traffic on Interstate I-81 in front of Defendant Worthy was slowing and stopped in response to a collision ahead. Yet, Defendant Worthy remained completely inattentive to these multiple hazardous conditions. In fact, immediately prior to the subject violent crashes, Mr. Worthy is seen in the video *overtaking* another passenger vehicle traveling in the passing lane. Before Defendant Worthy began to take back control of the tractor-trailer's speed and space management, the data from his tractor shows that the tractor he was operating at 65 mph had already recognized that the traffic slowing or stopped ahead of him that he was about to crash into was only 328 feet away. By the time he began to apply any brake to reduce his speed in the hazardous conditions of heavy rain-caused limited visibility and traction, it was too late, as he was traveling too fast to stop before impact even had he been operating in good conditions on a level, dry, stretch of highway. As captured in the video from the forward-looking camera on the defendant's tractor-trailer, Mr. Worthy and his tractor-

3

trailer careened from the far right lane, crashed first into Mr. Le Doux's stopped van in the left lane, and then continued to careen out of control, as his truck wildly left the interstate entirely, and crashed into another stopped car on the median.

Defendants' accident reconstructionist James Whelan, a mechanical engineer wholly devoid of training, education, and experience as to the standard of care for commercial motor vehicle operations, inappropriately attempts to offer unqualified opinions on the standard of care for safe commercial vehicle operation applicable to defendant Worthy. As Mr. Whelan is not qualified to offer these opinions, they should be excluded.

## **STANDARD**

Federal Rule of Evidence ("FRE") 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Federal Rule of Evidence 702 and the Supreme Court's decisions in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), govern the admissibility of expert testimony. The governing law "imposes a special gatekeeping obligation on the trial judge to ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) (emphasis in original) (cleaned up); see *Daubert*, 509 U.S. at 597. "The question

4

of whether a witness is qualified to testify [as an expert] is context-driven and can only be determined by the nature of the opinion he offers." *RG Steel Sparrows Point, LLC v. Kinder Morgan Bulk Terminals, Inc.*, 609 F. App'x 731, 738 (4th Cir. 2015) (per curiam) (internal quotation marks omitted). *Daubert* and its progeny put forth a two prong test for admissibility under the Federal Rules: "(1) the expert testimony must consist of 'scientific knowledge'-that is, the testimony must be supported by appropriate validation; and (2) the evidence or testimony 'must assist the trier of fact to understand the 5videncee or to determine a fact in issue." *United States v. Dorsey*, 45 F.3d 809, 813 (4th Cir. 1995), citing *Daubert*, 509 U.S. at 592. Insufficient facts or data underlying an expert's opinion will result in the exclusion of testimony. *MyGallons LLC v. U.S. Bancorp*, 521 F. App'x 297 (4th Cir. 2013). Likewise, an assumption which is not based upon evidence renders an expert's testimony too speculative to be reliable. *Boss v. Nissan N. Am.*, 228 F. App'x 331. 338 (4th Cir. 2013).

"[T]he expert opinion evidence [must] be connected to existing data by something more than the 'it is so because I say it is so' of the expert." *Holesapple v. Barrett*, 5 F. App'x 177, 180 (4th Cir. 2001). "Without testing, supporting literature in the pertinent field, peer reviewed publications[,] or some basis to assess the level of reliability, expert opinion testimony can easily, but improperly, devolve into nothing more than proclaiming an opinion is true 'because I say so.'" *Small v. WellDyne, Inc.*, 927 F.3d 169, 177 (4th Cir. 2019). "When the assumptions made by an expert are not based on fact, the expert's testimony is likely to mislead a jury, and should be excluded by the district court." *Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 144 (4th Cir. 1994).

The sufficiency of an expert's qualifications "depends on the nature of the opinion he offers." *Gladhill v. General Motors Corp.*, 743 F.2d 1049, 1052 (4th Cir. 1984). Consequently,

"just because a witness may be qualified as an expert in one area, 'does not ipso facto qualify him to testify as an expert in all related areas." *Shreve v. Sears, Roebuck & Co*., 166 F. Supp. 2d 378, 391 (D. Md. 2001). An expert must have specific knowledge, not mere capacity to acquire knowledge. *Id*. At 394. One does not necessarily become an expert on a topic simply by testifying about it in court. *Id*.

The proponent of the expert testimony bears the burden of proving that both prongs are met by a preponderance of the evidence. *Perkins v. United States*, 626 F.Supp. 2d 587, 592 (E.D. Va. 2009). Courts must recognize that expert witnesses have the potential to "be both powerful and quite misleading." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999)(quoting *Daubert*, 509 U.S. at 595). The failure of a trial court to address the reliability of an expert's testimony before it is presented to the jury, is an abuse of discretion. *Nease v. Ford Motor Co*., 848 F.3d 219, 231 (4th Cir. 2017).

## **ARGUMENT**

### **Whelan is not qualified to offer expert testimony on commercial vehicle operation.**

Defendant's proposed expert James Whelan has a B.S. in mechanical engineering and has worked previously from 2001 to 2007 as an applications engineer, assisting in "roller bearing selection, installation, maintenance and failure analysis"; then as a "lubrication systems application engineer"; then as an "applications engineer and lubrication systems specialist". . . supporting industrial customers with bearing recommendations, seal selection, failure analysis, and maintenance. *See* James Whelan Professional Summary, attached as **Exhibit 1** ("Whelan Summary"). Since 2007 he purports to have worked as an engineer working in a forensic capacity on auto and truck accidents and plumbing and HVAC systems failures. *See* Whelan Summary.

His "Professional Summary", by omission, demonstrates that he does not have any relevant commercial motor vehicle operations experience. *See* Whelan Summary. He does not possess a commercial motor vehicle license, and there is no indication that he has ever operated a commercial motor vehicle. *See* Whelan Summary. There is no reference to him ever attending any commercial motor vehicle operations schooling and his list of publications authored contains no publications regarding the operation of commercial motor vehicles. *See* Whelan Summary.

### **Whelan's Unqualified Opinions on Commercial Motor Vehicle Operations**

Despite his lack of qualification in commercial vehicle operation, Mr. Whelan seeks to offer the following opinions:

(a) That defendant Worthy "reduced brake force application during the jack knife event, which is a maneuver consistent with practices recommended by the Georgia commercial driver license manual." *See* Accident and Investigation Analysis report dated September 23, 2022, attached as **Exhibit 2 and** Accident and Investigation Analysis report dated October 21, 2022, attached as **Exhibit 3**.

(b) That defendant Worthy was keeping a **proper lookout** and observed vehicles in front of him. *See* Accident and Investigation Analysis report dated September 23, 2022, attached as **Exhibit 2**.

(c) That defendant Worthy applied his brakes less than 2 seconds after recognizing that there were slow moving vehicles on the roadway and an accident was imminent, which was a **reasonable perception-reaction time for an alert driver**. *See* Accident and Investigation Analysis report dated September 23, 2022, attached as **Exhibit 2 and** Accident and Investigation Analysis report dated November 18, 2022, attached as **Exhibit 4**.

(d) Under the hypothetical scenario that defendant Worthy was driving even slower, he increased the opportunity for an accident with trailing vehicles. *See* Accident and Investigation Analysis report dated September 23, 2022, attached as **Exhibit 2**.

(e) Likewise the Kia stopping in the roadway increased the opportunity for an accident. *See* Accident and Investigation Analysis report dated September 23, 2022, attached as **Exhibit 2**.

"Virginia law imputes a high degree of competence and knowledge to professional drivers when it comes to the safe operation of their vehicles because of the extensive training required to gain and maintain the proper operator's license." *Rainey v. Anderson*, 2018 U.S. Dist. LEXIS 231288 (E.D. Va.). Notably, Mr. Whelan does not hold a commercial vehicle operator's permit, nor does he provide any evidence of having ever even operated a commercial motor vehicle of any type, much less having operated a tractor and trailer in excess of 58,000 pounds at highway speeds, in inclement weather with the cruise control on, nor of having ever completed the very extensive training necessary to obtain a CDL.

"[A]n expert who is a mechanical engineer is not necessarily qualified to testify as an expert on any issue within the vast field of mechanical engineering. Unless he is to testify only to general engineering principles that any mechanical engineer would know, the engineer must possess "some special skill, knowledge or experience," concerning the particular issue before the court. *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 392 (Md. 2001). (internal citation omitted). In order to qualify as an expert, an individual must possess the requisite knowledge, skill, experience, training or education. *Virginia Vermiculite, Ltd. V. W.R. Grace & Co. Conn.,* 98 F.Supp.2d &29, 732 (W.D. Va. 2000).

8

Mr. Whelan does not possess any requisite knowledge as to commercial motor vehicle operation or the standards of care which dictate how a reasonable CMV Operator should react consistent with their specialized training. He does not possess a commercial motor vehicle license, nor does he have any experience operating a commercial tractor and trailer for hire, much less operating a commercial tractor-trailer during a jack knife event in inclement weather, or training other CMV operators in the appropriate conduct in such circumstances. As such, he is not competent to opine that that the Georgia commercial driver's license manual is the sole standard of care, and then apply that to the facts of this case. As this Court knows well, the specialized training provided within the States' CDL manual, authority for promulgation of such standards which are incorporated by reference into the Federal Motor Carrier Safety Administration, is but one of several sources relied upon by commercial truck driving experts in arriving at their opinions regarding standards of care for safe operation of a CMV. An expert's opinion must be derived from specialized knowledge, not speculation or conjecture. Therefore, having not met the requirements of Rule 702, Mr. Whelan cannot testify upon any aspect of the applicable standard of care as to the operation of a commercial tractor, including referencing the Georgia driver's license manual, as he has no superior scientific or specialized knowledge in the field of commercial tractor trailer operation.

The "opinion" as to whether defendant Worthy "kept a proper lookout and observed vehicles in front of him" is not based upon Mr. Whelan's prior experience operating or training others to operate a commercial motor vehicle. "[T]he expert opinion evidence [must] be connected to existing data by something more than the 'it is so because I say it is so' of the expert." *Holesapple v. Barrett*, 5 F. App'x 177, 180 (4th Cir. 2001). What is deemed " a proper lookout" for a CMV Operator is not the same as the "proper lookout" or reasonable care for the driver of a

personally owned vehicle (POV). Testimony of defendant Worthy, reviewed by Mr. Whelan, contradicts this very opinion Mr. Whelan offers. Defendant Worthy testified that despite receiving specialized training that "[s]even seconds or more of following distance" was an appropriate following distance "on a clear sunny day traveling on the interstate" (Worthy Dep. 48:18-21), he testified that, while operating his tractor at the maximum speed it could travel, while also in the rain, he could only see "about 15,20 feet ahead of me." Worthy Dep. 67:25 to 68:1-15. *See* Dep. Trans. of Worthy, relevant excerpts attached as **Exhibit 5**. As Mr. Whelan lacks knowledge, skill, experience or training in the operation of a commercial motor vehicle, he is simply not qualified to render an opinion that defendant Worthy complied with the appropriate standard of care for the safe operation of a commercial motor vehicle in these conditions "and kept a proper lookout." Mr. Whelan cites to no methodology for coming to a conclusion contrary to the defendant driver's testimony regarding a proper lookout was, nor the driver's admission that he was not keeping a proper lookout at the time of the crash. For these reasons, Mr. Whelan's opinion on the issue of the proper lookout for defendant Worthy, a CMV Operator, is inadmissible.

Likewise, the opinion that defendant Worthy "exercised a reasonable perception-reaction time for an alert driver" is not based upon Mr. Whelan's prior experience operating a commercial motor vehicle. "[T]he expert opinion evidence [must] be connected to existing data by something more than the 'it is so because I say it is so' of the expert." *Holesapple v. Barrett*, 5 F. App'x 177, 180 (4th Cir. 2001). As Mr. Whelan lacks knowledge, skill, experience or training in the operation of a commercial motor vehicle, he is not competent to render an opinion that defendant Worthy complied with a commercial motor vehicle operator standard of care. Therefore, his opinion is inadmissible on this issue.

Additionally, Mr. Whelan failed to take into account the many factors that affect perception reaction time such as a person's physical condition, visual acuity, motor and cognitive abilities, all of which affect the length of time required for that person to perceive and react to a danger. Mr. Whelan simply assumed that defendant Worthy fell into the "average" category, but he did no testing of defendant Worthy to establish that defendant Worthy fell within the average perception-reaction times. This unsupported assumption of "average" is further fatal to his ability to posit this opinion before the jury, as it is an assumption based on average drivers of POVs and not on any consideration of the fundamental distinct operational characteristics of the 58,000 pound tractor and trailer combination being operated by the defendant. An assumption which is not based upon evidence renders an expert's testimony too speculative to be reliable. *Boss v. Nissan N. Am.*, 228 F. App'x 331. 338 (4th Cir. 2013).

Not only did Mr. Whelan's methodology in coming to this opinion not rely on any testing or basic consideration of the defendant as the operator of a CMV, but neither of the two studies cited and relied upon by Mr. Whelan for his findings on perception-reaction or the driver's alertness make consideration as to this critical characteristic or the specific actions that he was performing in that role. (See Accident and Investigation Analysis report dated September 23, 2022 at Pg. 73, attached as **Exhibit 2**) Just last year, Judge Cullen of this District struck Mr. Whelan's opinion in a Commercial Motor Vehicle case, citing the insufficiency of his testing and calling that testimony "the kind of unreliable scientific testimony that underscores the court's important role as a gatekeeper of expert testimony." *Seamster v. Taylor*, Civil Action 4:21-cv-00021, 24 (W.D. Va. Jun. 15, 2022) (Mr. Whelan's opinions were excluded as to the number of impacts from a tractor-trailer based on his lack of testing in the basis of that opinion, which was of bulb filaments.) "A valid scientific theory misapplied because of the lack of sufficient factual foundation cannot

be admitted because it does not assist and indeed, may ultimately confuse the fact finder." *Smithers v. C & G Custom Module Hauling*, 172 F.Supp. 2d 765, 771 (E.D. Va. 2000). "When the assumptions made by an expert are not based on fact, the expert's testimony is likely to mislead a jury, and should be excluded by the district court." *Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 144 (4th Cir. 1994). In addition to Mr. Whelan's insufficient consideration of critical factors relating to perception-reaction and alertness, his report reflects no consideration of the effect of defendant Worthy having a personal computer tablet unlawfully mounted in the windshield of the CMV directly within his line of sight and for use while operating the 58,000 pound tractor-trailer combination. Therefore, for this reason as well, the Court should prevent this manner of blatant conjecture, and exclude this opinion.

With respect to the opinion that "[u]nder the hypothetical scenario Worthy was driving even slower, he increased the opportunity for an accident with trailing vehicles", Mr. Whelan provided no specialized knowledge or scientific basis for this assertion. "An expert's opinion must be derived from specialized knowledge, not speculation or conjecture." *Koenig v. Johnson*, 2020 U.S. Dist. LEXIS 81632, *17. "Without testing, supporting literature in the pertinent field, peer reviewed publications[,] or some basis to assess the level of reliability, expert opinion testimony can easily, but improperly, devolve into nothing more than proclaiming an opinion is true 'because I say so.'" *Small v. WellDyne, Inc.*, 927 F.3d 169, 177 (4th Cir. 2019). "When the assumptions made by an expert are not based on fact, the expert's testimony is likely to mislead a jury, and should be excluded by the district court." *Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 144 (4th Cir. 1994). Because Mr. Whelan provides no specialized knowledge or scientific basis for this opinion, it too is inadmissible.

With respect to the opinion that "[l]ikewise the Kia stopping in the roadway increased the opportunity for an accident", this opinion too is inadmissible. The evidence from the forward looking video from the defendant's own tractor shows that traffic ahead of the Kia was stopped. Mr. Whelan's opinion in this regards directly contradicts the video evidence which plainly shows that the Kia was stopped in the roadway along with the other traffic ahead immediately in front of her vehicle, and instead attempts to allude that the Kia was inappropriately stopped on the roadway. An assumption which is not based upon evidence renders an expert's testimony too speculative to be reliable. *Boss v. Nissan N. Am.*, 228 F. App'x 331. 338 (4th Cir. 2013). "[T]he expert opinion evidence [must] be connected to existing data by something more than the 'it is so because I say it is so' of the expert." *Holesapple v. Barrett*, 5 F. App'x 177, 180 (4th Cir. 2001). Therefore, this opinion is inadmissible as well.

### **Mr. Whelan cannot offer opinions that are mere possibilities.**

Mr. Whelan seeks to offer the opinion that "the Ford **may** have struck the rear of the Kia prior to the impact with the Honda." (emphasis added). "[N]otwithstanding the unhelpful nature of the substance of the opinions, expert opinions couched in terms of "possibilities" are per se unhelpful and inadmissible. While the rules of evidence 'do not require [an] expert to testify with absolute certainty," at expert opinion is 'fatally speculative' where it has no tendency to prove a consequential fact by probability." *Koenig v. Johnson*, 2020 U.S. Dist. LEXIS 81632, *24 quoting *Samuel v. Ford Motor Co*., 112 F.Supp. 2d 460, 470 (D.Md. 2000), aff'd sub nom. *Berger v. Ford Motor Co*., 95 F.App'x 520 (4th Cir. 2004).

As Mr. Whelan is simply offering a "possibility" as to what may have happened earlier in the crash sequence, such an opinion is "per se unhelpful and inadmissible" and must be excluded. *Id*.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that the Court grant his Partial Motion to Exclude the **Opinions of Defendants' Accident Reconstruction Expert James D. Whelan on the Standard of Care for Commercial Motor Vehicle Operation.**

                                                Respectfully submitted,

                                                **ANDRE G.H. LE DOUX V**

                                                By:  */s/  Paul R. Thomson, III*
                                                             Counsel

Paul R. Thomson, III (VSB No. 38765)
THOMSON LAW FIRM, P.C.
2721 Brambleton Avenue, SW
Roanoke, Virginia 24015
Tel.:  (540) 777-4900
Fax:  (540) 772-0578
paul@roanokeinjurylawyer.com

P. Brent Brown (VSB No. 18760)
GRANDIN TRIAL WORKS
1919 Westover Avenue, SW.
Roanoke, VA 24015
Tel.:  (540) 353-5782
brent@grandintrialworks.com

John E. Lichtenstein (VSB #27048)
Gregory L. Lyons (VSB #24037)
Joanna M. Meyer (VSB #86427)
LICHTENSTEIN LAW GROUP PLC
P.O. Box 601
Roanoke, Virginia 24004-0601
Tel.: (540) 343-9711
Fax: (540) 343-9713
John.Lichtenstein@lichtensteinlawgroup.com
Greg.Lyons@lichtensteinlawgroup.com
Joanna.Meyer@lichtensteinlawgroup.com

Stephen C. Huff, Esq. (VSB #92301)
CRANDALL & KATT
Attorneys and Counselors at Law

366 Elm Avenue, S.W.
Roanoke, Virginia 24016
Tel.: (540) 342-2000
Fax: (540) 345-3527
shuff@crandalllaw.com

*Counsel for Plaintiff Andre G.H. Le Doux*

## CERTIFICATE OF SERVICE

I electronically filed the foregoing with the clerk of court for the United States District Court for the Western District of Virginia, on this 18th day of January, 2023, using the CM/ECF system, which will send notification of such filing (NEF) to all CM/ECF registered attorneys on the NEF.

/s/ Paul R. Thomson, III
Paul R. Thomson, III (VSB No. 38765)
THOMSON LAW FIRM, P.C.
2721 Brambleton Avenue, SW
Roanoke, Virginia 24015
Tel.:   (540) 777-4900
Fax:   (540) 772-0578
paul@roanokeinjurylawyer.com