CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
2/10/2023
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
    DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JUDY M. PAUL, *et al.*, | CASE NO. 6:20-cv-51 |
| *Plaintiffs,* | |
| v. | MEMORANDUM OPINION |
| WESTERN EXPRESS, INC. *et al.*, | |
| *Defendants.* | JUDGE NORMAN K. MOON |

Plaintiffs Judy M. Paul and Andre G.H. Le Doux, V, sue Defendants Western Express, Inc., and Ervin Joseph Worthy to collect damages for the injuries they sustained during a multi-vehicle accident on Interstate 81. Defendants have renewed their motion for sanctions for spoliation against Plaintiff Paul and filed a motion to bifurcate the issues of liability and damages. For the following reasons, the Court will deny both motions.

## Background

On August 11, 2018, Plaintiffs Paul and Le Doux were driving their respective vehicles on Interstate 81. Dkt. 183 at 2. Paul was operating a 2012 Kia Soul and Le Doux was operating a Ford Econoline E250. *Id.* Roger Hiatt, operating a Honda Odyssey minivan, allegedly collided with Le Doux's Ford, which pushed his Ford into Paul's Kia. *Id.* at 2–3.[1] After this collision, Paul drove her Kia off the roadway into the grassy median while Le Doux remained stopped on the roadway. *Id.* Defendant Worthy, operating Defendant Western Express's tractor-trailer,

---

[1] Defendants dispute this allegation and claim that Le Doux's Ford first struck Paul's Kia and then Hiatt's Honda struck Le Doux's Ford. *See* Dkt. 190 ¶¶ 19–22.

struck the back of Le Doux's and Paul's vehicles. *Id.* at 3. Paul and Le Doux suffered injuries as a result of the collision.

Each Plaintiff filed a complaint, alleging negligence, negligent hiring, and negligent retention claims against Defendants and seeking $10 million in compensatory damages and $350,000.00 in punitive damages for injuries related to the collision. *See Le Doux v. Western Express, Inc.*, No. 6:20-cv-52, Dkt. 1; *Paul v. Western Express, Inc.*, No. 6:20-cv-51, Dkt. 1. Plaintiffs' cases were consolidated by consent motion. *See Le Doux*, No. 6:20-cv-52, Dkt. 32.

Prior to filing her complaint, Paul's insurance carrier, GEICO Advantage Insurance Company, declared Paul's Kia a total loss because of the collision. Dkt. 74-16. On September 11, 2018, GEICO took possession of the Kia and placed it in storage at Insurance Auto Auctions ("IAA") in Culpepper, Virginia. *Id.*; Dkt. 78-2. Le Doux's Ford and Hiatt's Honda were also stored at IAA by their insurance carriers. Dkt. 74 at 3.

Approximately one month after the accident, Paul, Worthy, and Western Express engaged counsel. Dkts. 74-1, 74-2. On September 21, 2018, counsel for Worthy and Western Express sent a litigation preservation letter to Paul's counsel, advising counsel to preserve the Kia and requesting to schedule an inspection of it. Dkt. 74-2 at 1–2. Paul's counsel coordinated with GEICO and IAA for the Kia to be preserved. Dkt. 74-6 at 3. On October 8, 2018, Defense counsel emailed Paul's counsel stating, "[w]e can perform the inspection on 10/16 or 10/17. Please confirm that you will notify the shop that we can photograph the vehicle and perform a data download." Dkt. 183-1 at 8.

A couple hours later, Paul's counsel responded with an attached correspondence from IAA, stating that Defense counsel should "direct any and all requests regarding the subject vehicle, including any inspection requests, directly to GEICO" and that Defense counsel's

2

"inspection request ha[d] been approved by GEICO." *Id.* at 2, 9. The attached correspondence also stated that an inspection could be scheduled by contacting Barry Coble, an IAA employee. *Id.* at 2. In response, Defense counsel asked Paul's counsel: "Will you be contacting Barry Coble on behalf of your client or do we need to contact him directly?" *Id.* at 23. Paul's counsel responded that "you can contact Barry Coble at IAA: [XXX-XXX-XXXX]." *Id.* at 24 (telephone number redacted).

Counsel for Paul, Le Doux, Hiatt, Worthy, and Western agreed to schedule an inspection of the vehicles in October 2018. Dkts. 74-3, 74-4. The October inspection date fell through because Paul's expert was unavailable. Dkt. 74 at 3. The parties re-scheduled the inspection of all three vehicles at IAA for November 2018. Dkts. 74-6 at 1, 74-7 at 1–3.

On November 12, 2018, the scheduled date of the inspection, experts for Le Doux, Hiatt, Western Express, and Worthy arrived at IAA. *See* Dkt. 74 at 4. Paul's expert did not arrive on time due to a purported unforeseen scheduling conflict. Dkts. 77 at 5, 78-8 at 2. The experts inspected the vehicles and successfully downloaded data from Hiatt's Honda, but they were unable to retrieve any data from Le Doux's Ford due to a power control module reset. Dkts. 74 at 4, 74-8. Later that afternoon, after the other experts left IAA, Christopher Borba, Paul's expert, arrived and photographed each vehicle. Dkt. 88. He did not attempt to download the Kia's event data recorder ("EDR"). *Id.*

Experts for Le Doux, Western Express, and Worthy disagree as to why the Kia's EDR was not downloaded during the November 12, 2018 inspection. James Whelan, an expert for Western Express and Worthy, stated that he had no authority to download the EDR from the Kia, but that the download would have been possible using a specific tool manufactured by Kia in 2013. Dkt. 81-1 at 2–3. Heath Stewart, an expert for Le Doux, claims that the experts at the

inspection discussed downloading the Kia's EDR at the time, but they made "a mutual decision . . . not to attempt data retrieval" as the 2012 Kia "was not supported" by the 2013 tool. Dkt. 87 at 3. Regardless of the reasons why, the EDR was not downloaded from the Kia on November 12, 2018.

After the November 12, 2018, inspection, the parties did not take any steps to set a second inspection date to download the Kia's EDR. *See* Dkts. 74 at 4–5, 77 at 6. Nor did any party communicate further interest to inspect the Kia before its destruction, which occurred approximately four months later in April 2019. *Id.*; Dkt. 91-1 at 1.

In August 2020, Paul filed this action. On November 2, 2020, Defense counsel sent Paul's counsel a letter seeking either the Kia's EDR or requesting to schedule a time to download the EDR. Dkt. 78-7 at 1–2. Paul's counsel responded that his expert had not downloaded the Kia's EDR and that he was unsure of the Kia's present location. Dkt. 78-8 at 1–2. Later, it was determined that GEICO had released the Kia on April 15, 2019 from the litigation hold so it could be sold. Dkt. 91-2. Prior to releasing the Kia, GEICO sent a letter to Crandall & Katt, the law firm representing Paul, asking whether the litigation hold remained in effect or if it had been lifted. Dkt. 91-1. The record does not reflect whether Crandall & Katt responded to GEICO's letter.

In June 2021, Defendants moved for sanctions for spoliation against Paul, asserting that she failed to preserve her Kia and its EDR before the parties had an opportunity to conduct a complete inspection of the Kia and download the EDR. Dkt. 73. Following the magistrate judge's Report and Recommendation, Dkt. 93, the Court denied their motion for sanctions without prejudice, indicating that the motion was premature, Dkt. 132.[2]

---

[2] Defendants' renewed motion for sanctions, Dkt. 169, is ripe for decision because all expert disclosure deadlines have passed and discovery relevant to the Kia is complete.

**Defendants' Renewed Motion for Sanctions for Spoliation**

A. **Legal Standard**

"Spoliation" means "the destruction or material alteration of evidence or . . . the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors. Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). Federal courts have two sources of authority to issue sanctions due to spoliation: first, under Fed. R. Civ. P. 37 when a party commits spoliation in violation of a specific court order, and second, under the court's inherent authority to control the judicial process. *Sampson v. City of Cambridge, Md.*, 251 F.R.D. 172, 178 (D. Md. 2008). A party seeking sanctions based on spoliation must show three elements:

> (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, 219 F.R.D. 93, 101 (D. Md. 2003); *see Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018) ("This analysis is similar to the Rule 37(e) framework, as it asks whether the responsible party had a duty to preserve, and breached that duty by failing to take reasonable steps to preserve.").

If the Court finds spoliation occurred, it must fashion an appropriate remedy. "[T]he applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Silvestri*, 271 F.3d at 590 (internal quotation marks omitted). The appropriate remedy depends on the spoliating party's exact "culpable state of mind": ordinary negligence, gross negligence, or bad faith. *Id.*; *Sampson*, 251 F.R.D. at 179. To impose

an adverse inference instruction, the moving party must show that the spoliating party "acted either willfully or in bad faith in failing to preserve relevant evidence." *Sampson*, 251 F.R.D. at 181; *see generally Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995); *Silvestri*, 271 F.3d at 593. If a defendant's conduct was merely negligent, "an adverse inference instruction is not an appropriate sanction." *Sampson*, 251 F.R.D. at 181.

A party seeking sanctions for spoliation bears the burden of proving spoliation and showing that the requested sanctions are warranted under governing law. *See Blue Sky Travel & Tours, LLC v. Al Tayyar*, 606 Fed. App'x 689, 698 (4th Cir. 2015). Generally, courts in the Fourth Circuit apply the clear and convincing standard when adverse inference instructions are requested. *Owen v. Rutherford Supply Corp.*, No. 3:19-cv-225, 2020 WL 2764815, at *1 (E.D. Va. Jan. 30, 2020); *Steves & Sons, Inc*, 327 F.R.D. at 104–05 (noting that while the burden of proof on a motion for spoliation sanctions remains unsettled, "the general approach of courts in the Fourth Circuit has been to apply the clear and convincing evidence standard, especially where a relatively harsh sanction like an adverse inference is sought").

### B. Analysis

Defendants renew their motion for sanctions for spoliation against Paul and request that the Court give a mandatory adverse inference instruction regarding the Kia's EDR. Dkts. 169, 170. Because they fail to show that Paul had a culpable state of mind, the Court will deny Defendants' renewed motion.

"[A]ny level of fault, whether it is bad faith, willfulness, gross negligence, or ordinary negligence" can satisfy the culpability requirement for sanctions for spoliation. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 497 (E.D. Va. 2011); *Pandora*

*Jewelry, LLC v. Chamilia, LLC,* No. CCB–06–3041, 2008 WL 4533902, at *9 (D. Md. Sept. 30, 2008) ("The Fourth Circuit requires only that the party seeking sanctions demonstrate fault, with the degree of fault impacting the severity of sanctions.") (citing *Silvestri*, 271 F.3d at 590)).

Defendants argue that Paul had the required culpable state of mind by failing "to take reasonable steps to preserve the data by either retaining control of the vehicle and its EDR data or by ensuring that the EDR data was extracted prior to the vehicle's destruction." Dkt. 185 at 10. In support of this argument, Defendants cite the affidavit of James Whelan, an expert for Western Express and Worthy, who stated he went to inspect the Kia on November 12, 2018, but that he lacked the authority to download the Kia's EDR. *See* Dkt. 81-1 at 2. He further claims that if he had permission, he would have brought the necessary tools to remove the EDR. *Id.*

Defendants have not shown by clear and convincing evidence that Paul failed to take reasonable steps to preserve the Kia and its ERD. Following Defense counsel's letter of preservation sent on September 21, 2018, Dkt. 74-1 at 1, Paul's counsel coordinated with GEICO and IAA for Paul's Kia to be preserved, Dkt. 74-6 at 3. On October 18, 2018, Defense counsel emailed Paul's counsel stating, "[w]e can perform the inspection on 10/16 or 10/17. Please confirm that you will notify the shop that we can photograph the vehicle and *perform a data download*." Dkt. 183-1 at 8 (emphasis added). A couple hours later, Paul's counsel sent an email with an attached correspondence from IAA, stating that Defense counsel should "direct any and all requests regarding the subject vehicle, including any inspection requests, directly to GEICO" and that Defense counsel's "inspection request ha[d] been approved by GEICO." *Id.* at 2. The attached correspondence also stated that an inspection could be scheduled by contacting an IAA employee. *Id.* Defense counsel then emailed Paul's counsel to determine whether Plaintiff's counsel would contact the IAA employee. *Id.* at 23. Paul's counsel responded that Defense

7

counsel should contact the IAA employee directly. *Id.* at 24. These email correspondences indicate that Paul's counsel took reasonable steps to preserve the Kia and its EDR before the November 2018 inspection by informing Defense counsel that they should direct requests about the Kia to GEICO and schedule an inspection directly through IAA.

Despite these email exchanges, Defendants argue that Paul's expert, who inspected the Kia later in the day on November 12, 2018, "could have taken the simple step of removing" the Kia's EDR. Dkt. 170 at 5.³ This argument is unpersuasive because Defense counsel told Paul's counsel that they would perform the inspection, including performing a data download, and did not ask Paul's counsel to remove the Kia's EDR. Dkt. 183-1 at 8. Additionally, after the November 2018 inspection, Defense counsel did not take any steps to set a second inspection date to download the Kia's EDR nor did they communicate a further interest to inspect the Kia before its destruction, which occurred in April 2019. Dkt. 91-2 at 1. It was not until November 2, 2020, more than a year after the destruction of the Kia, that Defense counsel sent a letter requesting the Kia's EDR and expressing concern that Paul's counsel had failed to preserve this evidence. Dkt. 183-1 at 14–15. Thus, the Court finds that Paul's counsel took reasonable steps to preserve the Kia and its EDR, but Defense counsel failed to take timely steps to gather such

---

³ During the first motion for sanctions, the parties disputed whether Va. Code § 46.2-1088.6 prevents any person other than Paul's expert from downloading the Kia's EDR. *See* Dkt. 93 at 3, n.1. The magistrate judge found that the issue was not ripe for decision at the time. *Id.* Virginia Code § 46.2-1088.6(B) provides that recorded data "may only be accessed by the motor vehicle owner or with the consent of the motor vehicle owner or the owner's agent or legal representative" except for enumerated exceptions. "Owner" is defined as "a person having all the incidents of ownership, including the legal title of a vehicle whether or not such person lends, rents, or creates a security interest in the vehicle." *Id.* § 46.2-1088.6(A). On August 11, 2018, GEICO stated in a letter that Paul's Kia was "a total loss as a result of Collision loss which occurred on August 11, 2018." Dkt. 183-1 at 1. GEICO further stated that Paul "chose not to retain the salvage, and GEICO took possession on 9/11/2018." *Id.* Accordingly, GEICO was either the Kia's owner or was acting as Paul's agent when it gave consent for Defendants to conduct an inspection of the Kia. Thus, Virginia Code § 46.2-1088.6 did not bar Defendants' expert from downloading the Kia's EDR.

evidence.

Even if the Court were to find Paul's counsel failed to take reasonable steps to preserve the Kia and its EDR, this finding would not justify granting Defendants' requested sanction of an adverse inference instruction. It would, at most, show Paul's counsel acted negligently in failing to preserve evidence. There is no evidence showing Paul's counsel acted in bad faith or willfully in failing to preserve the Kia to justify the Court ordering the harsh sanction of an adverse inference instruction. *See Sampson*, 251 F.R.D. at 181 (noting an adverse inference instruction is only appropriate where the party seeking that sanction demonstrates that the spoliating party "acted either willfully or in bad faith in failing to preserve relevant evidence"). As such, the Court will deny the motion for sanctions for spoliation.

### Defendants' Motion for Bifurcation

**A. Legal Standard**

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues . . ." Fed. R. Civ. P. 42 (b). A court may also bifurcate "to avoid confusion or to serve the ends of justice." *Jones v. City of Danville*, No. 4:20-cv-20, 2021 WL 1582774, at *2 (W.D. Va. Apr. 22, 2021).

Ordering separate trials "is within the sound discretion of the trial judge." *Bowie v. Sorrell*, 209 F.2d 49, 51 (4th Cir. 1953). "Separating issues for trial, however, 'is not to be routinely ordered.'" *Toler v. Gov't Emps. Ins. Co.*, 309 F.R.D. 223, 225 (S.D.W. Va. 2015) (citing Fed. R. Civ. P. 42(b) advisory committee's note); *see also* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. § 2388 (3d ed. 2022) ("Rule 42(b) should be resorted to only as the result of the exercise of informed discretion when the district judge believes that

9

separation will achieve the purposes of the separate trial rule.")). As the moving party, Defendants have the burden of showing that bifurcation is appropriate. *See Toler*, 309 F.R.D. at 225.

### B. Analysis

Defendants move for bifurcation on the issues of liability and damages, pursuant to Fed. R. Civ. P. 42(b), because they claim (1) it will promote the interests of judicial economy and efficiency and (2) prevent prejudice. Dkts. 167, 168. Having carefully considered the parties' arguments, the Court finds that Defendants have failed to meet their burden of demonstrating bifurcation is warranted in this case.

In support of their motion, Defendants argue that bifurcating would promote the interests of judicial economy and efficiency by potentially avoiding the unnecessary damage phase of trial. Dkt. 168 at 5–8. They specifically argue that the issue of liability is "relatively straight forward [sic]" while the issue of damages is complex. Dkt. 168 at 4–8. However, this "potential time savings is true in all bifurcated cases" and does not independently justify bifurcation. *R.E. Linder Steel Erection Co. v. Wedemeyer, Cernik, Corrubia, Inc.*, 585 F. Supp. 1530, 1534 (D. Md. 1984); *see Collier v. Land & Sea Rest. Co., LLC*, No. 7:13-cv-00104, 2015 WL 6126476, at *3 (W.D. Va. Oct. 16, 2015).

Defendants also claim that there will be little-to-no overlap in the evidence during the liability and damages phases of trial. Dkt. 168 at 7. However, the Court finds that Defendants' claim is contested by Plaintiffs and unsupported in the present record. *See Topline Sols., Inc. v. Sandler Sys., Inc.*, No. CIV. WDQ-09-3102, 2015 WL 4385940, at *8 (D. Md. July 14, 2015) (noting "bifurcation is inappropriate when the evidence on liability and damages overlaps")

(cleaned up)); *see cf Cleveland Bros. Equip. Co. v. Vorobey*, No. 4:19-cv-01708, 2020 WL 3432642, at *1 (M.D. Pa. June 23, 2020) (denying bifurcation in an automobile accident case because "determining liability and damages together" would promote judicial economy considering that an element of a negligence claim is that the plaintiff suffered damages). For instance, Plaintiffs claim the jury will need to hear damage evidence about the distinguishing characteristics of tractor-trailers "to appreciate the destructive impact to the human body when a tractor-trailer crashes into an ordinary vehicle at highway or close to highway speeds" during the liability phase of trial. Dkt. 182 at 3. Additionally, at the hearing on the bifurcation motion, Le Doux's counsel claimed evidence on Le Doux's alleged brain trauma may be necessary for the jury to understand inconsistencies in Le Doux's testimony.

Thus, the Court is of the opinion that much of the evidence on how the accident occurred and circumstances surrounding it will be admissible during both phases of trial. Accordingly, the Court is not persuaded that bifurcation would promote judicial economy and efficiency or be less prejudicial to Defendants.

## Conclusion

For these reasons, the Court will deny Defendants' renewed motion for sanctions for spoliation, Dkt. 169, and Defendants' motion to bifurcate the issues of liability and damages, Dkts. 167.

The Clerk of Court is directed to deliver a copy of this Memorandum Opinion to all counsel of record.

Entered this **10th** day of February, 2023.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE