IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | |
|---|---|
| JUDY M. PAUL )<br>)<br>   Plaintiff )<br>)<br>v. )<br>)<br>WESTERN EXPRESS, INC., et al. )<br>)<br>   Defendants. ) | Civil Action No.: 6:20-cv-051 |
| WESTERN EXPRESS, INC., et al. )<br>)<br>Third-Party Plaintiffs, )<br>)<br>v. )<br>)<br>RANDALL EMERICK, et al. )<br>)<br>Third-Party Defendants. ) | |
| ANDRE G.H. LE DOUX V )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WESTERN EXPRESS, INC., et al. )<br>)<br>Defendants. ) | Civil Action No.:  6:20-cv-052 |

**REPLY IN SUPPORT OF PLAINTIFF ANDRE G.H. LE DOUX V'S MOTION TO EXCLUDE THE OPINIONS OF DEFENDANTS' ACCIDENT RECONSTRUCTION EXPERT JAMES D. WHELAN ON THE STANDARD OF CARE FOR COMMERCIAL MOTOR VEHICLE OPERATION.**

Plaintiff Andre G.H. Le Doux V, ("Plaintiff"), by counsel, submits his Reply in Support of his Motion to Exclude the Opinions of Defendants' Accident Reconstruction Expert James D.

Whelan on the Standard of Care for Commercial Motor Vehicle Operation. In support thereof, Plaintiff states as follows:

## STANDARD

The sufficiency of an expert's qualifications "depends on the nature of the opinion he offers." *Gladhill v. General Motors Corp*., 743 F.2d 1049, 1052 (4th Cir. 1984). Consequently, "just because a witness may be qualified as an expert in one area, 'does not ipso facto qualify him to testify as an expert in all related areas." *Shreve v. Sears, Roebuck & Co*., 166 F. Supp. 2d 378, 391 (D. Md. 2001). An expert must have specific knowledge, not mere capacity to acquire knowledge. *Id*. At 394. One does not necessarily become an expert on a topic simply by testifying about it in court. *Id*.

The proponent of the expert testimony bears the burden of proving that both prongs are met by a preponderance of the evidence. *Perkins v. United States*, 626 F.Supp. 2d 587, 592 (E.D. Va. 2009). Courts must recognize that expert witnesses have the potential to "be both powerful and quite misleading." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999)(quoting *Daubert*, 509 U.S. at 595). The failure of a trial court to address the reliability of an expert's testimony before it is presented to the jury, is an abuse of discretion. *Nease v. Ford Motor Co*., 848 F.3d 219, 231 (4th Cir. 2017).

"[A]n expert who is a mechanical engineer is not necessarily qualified to testify as an expert on any issue within the vast field of mechanical engineering. Unless he is to testify only to general engineering principles that any mechanical engineer would know, the engineer must possess "some special skill, knowledge or experience," concerning the particular issue before the court. *Shreve v. Sears, Roebuck & Co*., 166 F. Supp. 2d 378, 392 (Md. 2001). (internal citation omitted). In order to qualify as an expert, an individual must possess the requisite knowledge, skill, experience,

2

training or education. *Virginia Vermiculite, Ltd. V. W.R. Grace & Co. Conn.,* 98 F.Supp.2d &29, 732 (W.D. Va. 2000).

## ARGUMENT

### Whelan is not qualified to offer expert testimony on commercial vehicle operation.

Defendants' Opposition brief confirms that their proposed expert James Whelan does not have any commercial motor vehicle operations experience. *See* ECF No. 225, p. 4-5. He does not possess a commercial motor vehicle license, and he has never operated a commercial motor vehicle. *Id*. He has never attended a commercial motor vehicle operations school, nor has he authored any publications regarding the operation of commercial motor vehicles. *Id*. To bypass this fatal flaw, the Defendants attempt to dress Mr. Whelan's driving opinions up as "engineering opinions". This dress simply won't fit.

### Whelan's Unqualified Opinions on Commercial Motor Vehicle Operations

Despite what the Defendants say, Mr. Whelan has offered additional opinions outside of accident reconstruction, commenting on Defendant Worthy's operation of his tractor and whether his conduct was reasonable. More specifically, Mr. Whelan has opined that defendant "Worthy "reduced brake force application during the jack knife event, <u>which is a maneuver consistent with practices recommended by the Georgia commercial driver license manual</u>." *See* ECF No. 205, p.7 and ECF No. 205-2, p. 75. While Mr. Whelan may have analyzed data from the engine, nowhere does that data indicate that such action, even if performed by Defendant Worthy, was a "maneuver consistent with practices recommended by the Georgia CDL manual". *Id*. As such, this is not an "accident reconstruction opinion", this an attempt by an expert with zero commercial motor vehicle operation experience or training, to offer his judgment as to commercial motor vehicle operation in Georgia or otherwise, and it fails.

Mr. Whelan does not possess any requisite knowledge as to commercial motor vehicle operation or the standards of care which dictate how a reasonable CMV Operator should react consistent with their specialized training. He does not possess a commercial motor vehicle license, nor does he have any experience operating a commercial tractor and trailer for hire, much less operating a commercial tractor-trailer during a jack knife event in inclement weather or training other CMV operators in the appropriate conduct in such circumstances. As such, he is not competent to offer this opinion and it must be excluded.

Next, Mr. Whelan offers the opinions that defendant "Worthy <u>was keeping a **proper lookout** and observed vehicles in front of him</u>." *See* ECF No. 205, p.7 and ECF No. 205-2, p. 76. First Mr. Whelan has no idea what Defendant Worthy actually observed. Secondly, Defendant Worthy had a tablet affixed to his windshield and located within his field of view, in violation of FMCSR 393.90(e).[1]

Furthermore, it is undisputed that Defendant Worthy was operating a commercial tractor trailer at 65 miles per hour at highway speeds, with his cruise control on in the rain, in direct violation of his training, and the cruise control/safety system manufacturer's warnings. Likewise, FMCSR 392.14 required Defendant Worthy to reduce his speed and exercise "extreme caution" in these hazardous conditions. These factors were ignored by Mr. Whelan. The "opinion" as to whether defendant Worthy "kept a proper lookout and observed vehicles in front of him" is not based upon Mr. Whelan's prior experience operating or training others to operate a commercial motor vehicle. "[T]he expert opinion evidence [must] be connected to existing data by something more than the 'it is so because I say it is so' of the expert." *Holesapple v. Barrett*, 5 F. App'x 177, 180 (4th Cir. 2001). What is deemed "a proper lookout" for a CMV Operator is not the same as

---

[1] It is undisputed that Defendant Worthy deleted all of the tablet's contents during the litigation. This tablet possessed the capability of viewing movies.

4

the "proper lookout" or reasonable care for the driver of a personally owned vehicle (POV). Therefore, this opinion should be excluded as well.

Mr. Whelan next opined that Defendant "Worthy applied his brakes less than 2 seconds after recognizing that there were slow moving vehicles on the roadway and an accident was imminent, which was a **reasonable perception-reaction time for an alert driver**". *See* ECF No. 205, p.7 and ECF No. 205-2, p. 76. First, Mr. Whelan has no idea when Defendant Worthy first recognized that there were slow-moving vehicles ahead and the data shows in fact the Bendix system recognized the traffic first and began to take action to reduce the tractor's speed before Defendant Worthy took any action. See **Exhibit 1**, Stewart report, p. 3.

Impairing his vision, Defendant Worthy had a tablet affixed to his windshield and within his field of view, in violation of FMCSR 393.90(e). This tablet had the capability to play movies as well. Mr. Whelan's opinion skips the facts that Defendant Worthy was operating his tractor trailer at 65 miles per hour, in the rain with cruise control set, in direct violation of his training, and the cruise control/safety system manufacturer's warnings, and jumps to the end. Likewise, FMCSR 392.14 required Defendant Worthy to reduce his speed and exercise "extreme caution" in these hazardous conditions. Mr. Whelan's disregard of these facts and regulations renders his opinion inadmissible.

Furthermore, his opinion is not based upon any prior experience operating a commercial motor vehicle. "[T]he expert opinion evidence [must] be connected to existing data by something more than the 'it is so because I say it is so' of the expert." *Holesapple v. Barrett*, 5 F. App'x 177, 180 (4th Cir. 2001). As Mr. Whelan lacks knowledge, skill, experience or training in the operation of a commercial motor vehicle, he is not competent to render an opinion that defendant Worthy had a reasonable perception-reaction time for tractor trailer operator, driving a 58,000 pound

5

tractor trailer in the rain on a wet highway at 65 miles per hour. Therefore, his opinion is inadmissible on this issue as well.

Mr. Whelan also failed to take into account the many factors that affect perception reaction time such as a person's physical condition, visual acuity, motor and cognitive abilities, all of which affect the length of time required for that person to perceive and react to a danger. Mr. Whelan did no testing of defendant Worthy to establish that defendant Worthy fell within the average perception-reaction times. This unsupported assumption of "average" is further fatal to his ability to posit this opinion before the jury, as it is an assumption based on average drivers of POVs and not on any consideration of the fundamental distinct operational characteristics of the 58,000 pound tractor and trailer combination being operated by the defendant. An assumption which is not based upon evidence renders an expert's testimony too speculative to be reliable. *Boss v. Nissan N. Am.*, 228 F. App'x 331. 338 (4th Cir. 2013). This is yet another basis for exclusion of this opinion.

Mr. Whelan offered the following general statement that "Under the hypothetical scenario that defendant Worthy was driving even slower, he <u>increased the opportunity for an accident with trailing vehicles</u>" ECF No. 205, p.8 and ECF No. 205-2, p. 76. The sole support cited for this opinion was a report from a study in 1964, **Accidents on Main Rural Highways Related to Speed, Driver, and Vehicle** as stated by Defense counsel. See ECF 225, p. 9.[2]

Mr. Whelan's basis for his opinion disregards the fact that Defendant Worthy was a professional truck driver who received specialized training concerning the safety requirements

---

[2] Interstate 81 is certainly no longer considered a rural highway as it is one of the most heavily travelled highways in the United States. It is impossible to tell from the 59-year-old study, what percentage, if any, of these crashes involved vehicles, much less commercial motor vehicles, slowing on a highway in rain, due to weather and a crash up ahead. This study relied on police reports and driver reports and third parties. The speed estimates by these individuals were subject to error and unknown reliability, and many of the crashes involving slow speed likely involved vehicles that were slowing or stopping to turn or just entering the road. Furthermore, there has been quite an advancement with respect to passenger and commercial motor vehicles safety equipment in the last 59 years.

contained in FMCSR 392.14. He invites this Court to permit the jury to disregard those specific regulations. Specifically, Mr. Whelan's opinion that Defendant Worthy should not have slowed down requires the complete disregard of FMCSR 392.14 "hazardous conditions; extreme caution," which provides in pertinent part that:

> "[e]xtreme caution in the operation of a commercial motor vehicle shall be exercised when **hazardous conditions, such as those caused by** . . . **fog, mist, rain .** . . adversely affect visibility or traction. **Speed shall be reduced when such conditions exist.** If conditions become sufficiently dangerous, the operation of the commercial motor vehicle shall be discontinued and shall not be resumed until the commercial motor vehicle can be safely operated . . . " (emphasis added).

By suggesting that Defendant Worthy should not have reduced his speed for these hazardous conditions, Mr. Whelan attempts to substitute his own judgment for that of Congress and the Federal Motor Carrier Safety Administration who promulgated the controlling regulations which mandated that Defendant Worthy reduce his speed. Furthermore, such an opinion does not offer anything related to an "accident reconstruction opinion" as the Defendants assert, instead this opinion is a direct comment as to Defendant Worthy's commercial vehicle operation. As Mr. Whelan does not possess any requisite knowledge as to commercial motor vehicle operation or the standards of care which dictate how a reasonable commercial motor vehicle operator should react consistent with their specialized training, this opinion should be excluded as well.

Mr. Whelan also offered the opinion that "the Kia stopping in the roadway <u>increased the opportunity for an accident</u>." ECF No. 205, p. 8 and ECF 205-2, p. 76. Defendants' counsel conveniently ignored the fact that the evidence from the forward looking video from the defendant's own tractor shows that traffic ahead of the Kia was stopped. Mr. Whelan's opinion directly contradicts the video evidence which plainly shows that the Kia was stopped in the roadway along with the other traffic ahead immediately in front of her vehicle, and instead attempts

to allude that the Kia was inappropriately stopped on the roadway. An assumption which is not based upon evidence renders an expert's testimony too speculative to be reliable. *Boss v. Nissan N. Am.*, 228 F. App'x 331. 338 (4th Cir. 2013). "[T]he expert opinion evidence [must] be connected to existing data by something more than the 'it is so because I say it is so' of the expert." *Holesapple v. Barrett*, 5 F. App'x 177, 180 (4th Cir. 2001). Therefore, this opinion is inadmissible as well.

### **Mr. Whelan cannot offer opinions that are mere possibilities.**

Mr. Whelan seeks to offer the opinion that "the Ford **may** have struck the rear of the Kia prior to the impact with the Honda." (emphasis added). "[N]otwithstanding the unhelpful nature of the substance of the opinions, expert opinions couched in terms of "possibilities" are per se unhelpful and inadmissible. While the rules of evidence 'do not require [an] expert to testify with absolute certainty," at expert opinion is 'fatally speculative' where it has no tendency to prove a consequential fact by probability." *Koenig v. Johnson*, 2020 U.S. Dist. LEXIS 81632, *24 quoting *Samuel v. Ford Motor Co*., 112 F.Supp. 2d 460, 470 (D.Md. 2000), aff'd sub nom. *Berger v. Ford Motor Co*., 95 F.App'x 520 (4th Cir. 2004).

As Mr. Whelan is simply offering a "possibility" as to what may have happened earlier in the crash sequence, such an opinion is "per se unhelpful and inadmissible" and must be excluded. *Id*. Furthermore, the jury will be able to hear from the only eyewitness to this event, Kenny Murphy, who advises that the Ford van was pushed into the Kia, after the Honda van struck the rear of the Ford van.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully request that the Court grant his Motion to Exclude the Opinions of Defendants' Accident Reconstruction Expert James D. Whelan on the Standard of Care for Commercial Motor Vehicle Operation.

                                        Respectfully submitted,

                                        **ANDRE G.H. LE DOUX V**

                                        By:    */s/ Paul R. Thomson, III*
                                                        Counsel

Paul R. Thomson, III (VSB No. 38765)
THOMSON LAW FIRM, P.C.
2721 Brambleton Avenue, SW
Roanoke, Virginia 24015
Tel.:  (540) 777-4900
Fax:  (540) 772-0578
paul@roanokeinjurylawyer.com

P. Brent Brown (VSB No. 18760)
GRANDIN TRIAL WORKS
1919 Westover Avenue, SW.
Roanoke, VA 24015
Tel.:  (540) 353-5782
brent@grandintrialworks.com

John E. Lichtenstein (VSB #27048)
Gregory L. Lyons (VSB #24037)
Joanna M. Meyer (VSB #86427)
LICHTENSTEIN LAW GROUP PLC
P.O. Box 601
Roanoke, Virginia 24004-0601
Tel.: (540) 343-9711
Fax: (540) 343-9713
John.Lichtenstein@lichtensteinlawgroup.com
Greg.Lyons@lichtensteinlawgroup.com
Joanna.Meyer@lichtensteinlawgroup.com

Stephen C. Huff, Esq. (VSB #92301)
CRANDALL & KATT
Attorneys and Counselors at Law

366 Elm Avenue, S.W.
Roanoke, Virginia 24016
Tel.: (540) 342-2000
Fax: (540) 345-3527
shuff@crandalllaw.com

*Counsel for Plaintiff Andre G.H. Le Doux*

### CERTIFICATE OF SERVICE

I electronically filed the foregoing with the clerk of court for the United States District Court for the Western District of Virginia, on this 13th day of February, 2023, using the CM/ECF system, which will send notification of such filing (NEF) to all CM/ECF registered attorneys on the NEF.

/s/ Paul R. Thomson, III
Paul R. Thomson, III (VSB No. 38765)
THOMSON LAW FIRM, P.C.
2721 Brambleton Avenue, SW
Roanoke, Virginia 24015
Tel.:   (540) 777-4900
Fax:   (540) 772-0578
paul@roanokeinjurylawyer.com