CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
3/23/2023
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
      DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JUDY M. PAUL, *et al.*, | CASE NO. 6:20-cv-51 |
| *Plaintiffs*, | |
| v. | MEMORANDUM OPINION & ORDER |
| WESTERN EXPRESS, INC. *et al.*, | |
| *Defendants*. | JUDGE NORMAN K. MOON |

Plaintiffs Paul and Le Doux sue Defendants Western Express, Inc. and Worthy to collect damages for the injuries they sustained during a multi-vehicle accident on Interstate 81. Worthy and Le Doux have filed cross motions for summary judgment on Plaintiffs' punitive damages claim based on Worthy's alleged willful and wanton negligence. Defendants have also moved for summary judgment, claiming that Le Doux was contributorily negligent for the accident. For the following reasons, the Court will deny all the motions.

## Background

On August 11, 2018, Paul, Le Doux, Roger Hiatt,[1] and Worthy were driving their respective vehicles on southbound Interstate 81 in Rockbridge County, Virginia when they were involved in a multi-vehicle accident. Paul was operating a 2012 Kia Soul and Le Doux was operating a Ford van with Kenneth Murphy riding as a passenger in his van. Dkt. 190-2 at 2; Dkt. 190 at 2. Roger Hiatt was operating a Honda Odyssey minivan. Dkt. 190-3 at 3. The son of

---

[1] Hiatt settled Plaintiffs' claim against him and is not a party to this action. *See* Dkt. 190 at 2.

1

Plaintiff Le Doux, Forrest Le Doux, was also driving his respective vehicle on southbound Interstate 81 with Eric Bernocco-Donahue riding in the front passenger seat of his vehicle. Dkt. 190-1 at 4. Forrest Le Doux was not involved in the accident.

Prior to the accident, the weather conditions shifted from a light rain to a heavy downpour. Dkt. 190-2 at 3; Dkt. 190-3 at 4. Either due to traffic or the weather, some motorists came to stop on the roadway. Dkt. 190-1 at 2–3. Paul, Le Doux, and Hiatt were then involved in a car accident. *See* Dkt. 190-3 at 5–6. Defendants claim that Le Doux's Ford first struck Paul's Kia and then Hiatt's Honda struck Le Doux's Ford. Dkt. 190 ¶¶ 19–22. Le Doux disagrees and contends that Hiatt's Honda hit the rear of Le Doux's van, which caused his van to hit Paul's Kia.[2] Dkt. 229 at 6. Following the car accident, Hiatt's Honda spun off to the left side of the interstate and onto the median. Dkt. 190-3 at 6. Paul drove her Kia off the roadway into the grassy median while Le Doux's Ford came to a stop on the roadway. Dkt. 223, Ex. G; Dkt. 190-8 at 10.

Worthy, operating Western Express's tractor-trailer, was using cruise control, and driving at 65 mph in the right lane of the interstate. *See* Dkt. 223, Ex. G; Dkt. 233 ¶ 12. The posted speed limit was 70 mph. Dkt. 223-6 at 4. Upon seeing Le Doux's stopped vehicle as well as other stopped motorists in front of him on the interstate, Worthy stepped on his brakes and swerved into the left lane, resulting in his vehicle hitting the back of Le Doux's Ford. Dkt. 190-2 at 5; Dkt. 190-8 at 39; *see* Dkt. 223, Ex. G. After hitting Le Doux's Ford, Worthy's tractor-trailer

---

[2] The record reflects a material dispute on the sequence of the collisions. Kenneth Murphy, the passenger in Le Doux's Ford at the time of the accident, testified that he saw Hiatt's Honda push Le Doux's Ford into Paul's Kia. Dkt. 190-2 at 4–5. Hiatt, however, testified that he has "no memory of where the Kia was," and that he did not see Le Doux's Ford hit Paul's Kia. Dkt. 190-3 at 4–5. Defendants claim that Bernocco-Donahue's testimony supports an inference that Hiatt's Honda struck Le Doux's Ford after Le Doux's Ford hit Paul's Kia. Dkt. 190 ¶ 22 (citing Dkt. 190-8).

continued onto the grassy median and hit the back of Paul's Kia. Dkt. 223, Ex. G. According to Murphy, Worthy's collisions with Le Doux and Paul occurred approximately two to three seconds after Le Doux's collisions with Hiatt and Paul. *See* Dkt. 190-2 at 5.

Le Doux and Paul have filed amended complaints, which are virtually identical to one another. Dkt. 98; *Le Doux*, No. 6:20-cv-52, Dkt. 46. They allege negligence and willful and wanton negligence against Worthy. *Id.* They also claim that Western Express is vicariously liable through respondeat superior for Worthy's negligence because he was acting in the course and scope of his employment. Dkt. 98 ¶¶ 24–27; *Le Doux v. Western Express, Inc.*, No. 6:20-cv-52, Dkt. 46 ¶¶ 24–27. They seek $10 million in compensatory damages against Worthy and Western Express and $350,000 in punitive damages for Worthy's alleged willful and wanton negligence. *Id.*

## Standard of Review

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable [fact finder] could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018).

The moving party bears the burden of establishing that summary judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party must set forth specific, admissible facts to demonstrate a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-movant may not rest on allegations in the pleadings; rather, he must present sufficient

evidence such that a reasonable fact finder could find by a preponderance of the evidence for the non-movant. *See Celotex Corp.*, 477 U.S. at 322–24; *Sylvia Dev. Corp. v. Calvert Cnty, Md.*, 48 F.3d 810, 818 (4th Cir. 1995). The district court must "view the evidence in the light most favorable to the nonmoving party" and "refrain from weighing the evidence or making credibility determinations." *Variety Stores, Inc.*, 888 F.3d at 659.

When cross-motions for summary judgment are before a court, a court must "consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Defs. of Wildlife v. N.C. DOT*, 762 F.3d 374, 392 (4th Cir. 2014) (quoting *Bacon v. City of Richmond, Va.*, 475 F.3d 633, 638 (4th Cir. 2007) (internal quotation marks omitted)).

## Discussion

### A. Defendants' Summary Judgment Motion on Plaintiff Le Doux's Purported Contributory Negligence

Defendants move for summary judgment based on Le Doux's purported contributory negligence. Dkt. 189.

A driver of a motor vehicle has a duty to exercise ordinary care in maintaining a proper lookout and keeping their vehicle under proper control, meaning that the "driver is required to use ordinary care to observe other vehicles on the highway, to see what a reasonable person would have seen, and to react as a reasonable person would have reacted under the circumstances to avoid a collision." *Litchford v. Hancock*, 352 S.E.2d 335, 336–37 (Va. 1987). Virginia applies the contributory negligence doctrine—meaning a plaintiff's negligence will bar recovery if it "is a proximate cause of the accident." *Id.* Generally, "contributory negligence and proximate cause are factual issues for resolution by a jury." *Id.* Such issues become legal questions for a court to

resolve "only when reasonable minds cannot differ about the result." *Karim v. Grover*, 369 S.E.2d 185, 186 (Va. 1988).

In their summary judgment motion, Defendants argue Le Doux was negligent (1) by continuing to drive on Interstate 81 despite having limited visibility due to the heavy rain, (2) for following too closely to Paul's Kia prior to his collision with Hiatt's Honda, and (3) by failing to use hazard lights when he reduced his speed and stopped his Ford on Interstate 81 prior to being hit by Worthy. *See* Dkt. 190.

The record reflects a genuine dispute of material fact regarding Le Doux's alleged negligence. Defendants, as the moving parties, fail to offer undisputed evidence to support their claims that Le Doux had limited visibility when he continued to drive on Interstate 81 during the heavy rain or that Le Doux was following too closely to Paul's Kia.[3] Additionally, the evidence in the record indicates that Le Doux was slowing the speed of his van prior to the accident, which raises a genuine dispute as to whether he was exercising reasonable care while driving in the heavy rain. *See, e.g.*, Dkt. 190-2 at 1840 (Murphy, the passenger in Le Doux's van at the time of the accident, testified that Le Doux's Ford was "slowing down, about to stop because everyone was stopping" before Hiatt's Honda hit the rear of Le Doux's Ford.). Moreover, it is a jury issue whether Le Doux had enough time to move his van after he collided with Hiatt and Paul before Worthy hit his van.

---

[3] In their brief, Defendants assert that "undisputed material evidence in the record establishes that Le Doux was following too closely to Paul's Kia." Dkt. 190 at 12. To support this claim, they reference photographs showing that the bumper of Paul's Kia was attached to the front bumper of Le Doux's Ford after the collision and that both parties' experts concurred that Le Doux's Ford hit Paul's Kia. *Id.* at 12–13. They also cite testimony by Bernocco-Donahue, which they claim supports an inference that Le Doux's Ford hit Paul's Kia prior to Hiatt's Honda hitting Le Doux's Ford. *Id.* However, this evidence only supports that Le Doux's Ford hit Paul's Kia; it does not establish as a matter of law that Le Doux was following too closely to Paul's Kia.

Defendants, in the alternative, assert that "either nobody was to blame[,] or everyone was negligent to some degree" for the multi-vehicle accident. Dkt. 190 at 11. They claim that the sudden wall of rain either caused the multi-vehicle accident or negated Le Doux's, Worthy's, and the other drivers' negligence for continuing to drive in the rain since they were all equally negligent. *Id.* at 10. However, the Court is unpersuaded by such an argument. Le Doux and Worthy both had a duty to operate his respective motor vehicle as a reasonable person would under the same or similar circumstances. Putting aside the disputed issue of whether Le Doux and Worthy were operating under the same weather conditions at all times—a separate and material factual issue on which there is conflicting evidence requiring resolution by the jury—Worthy's tractor-trailer needed more distance to stop than Le Doux's Ford traveling at the same speed. Because of this key difference, the Court is of the opinion that Le Doux and Worthy were not operating their vehicles under the same circumstances, and thus, the issue of whether the weather conditions may have equally negated the alleged negligence of Le Doux and Worthy is also a question of fact for the jury.

Accordingly, at this stage of the litigation, the Court does not find as a matter of law that Le Doux acted negligently while driving his van. *See Variety Stores, Inc.*, 888 F.3d at 659. Thus, Defendants' summary judgment motion on Le Doux's contributory negligence will be denied.

### B. Defendant Worthy's Summary Judgment Motion on Plaintiffs' Punitive Damages Claim

Worthy moves for summary judgment on Plaintiffs' punitive damages claim, which would result in the dismissal of Plaintiffs' willful and wanton negligence claim against Worthy. Dkt. 165.

Virginia allows punitive damages "only in limited circumstances and require[s] truly

egregious conduct in order to qualify." *Lester v. SMC Transp., LLC*, No. 7:15-cv-00665, 2016 WL 7439424, at *2 (W.D. Va. Dec. 22, 2016); *see Bowers v. Westvaco Corp.*, 419 S.E.2d 661, 668 (Va. 1992). A plaintiff may recover punitive damages upon a showing of willful and wanton negligence. *See Booth v. Robertson*, 374 S.E.2d 1, 3 (Va. 1988). Willful and wanton negligence means "acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Harris v. Harman*, 486 S.E.2d 99, 101 (Va. 1997) (internal quotation marks and citation omitted). It is the type of conduct that goes "beyond that which shocks fair-minded people." *Id.* Unlike gross or ordinary negligence, willful and wanton negligence "requires an actual or constructive consciousness that injury will result from the act done or omitted." *Alfonso v. Robinson*, 514 S.E.2d 615, 618 (Va. 1999). Whether a defendant's conduct amounts to willful and wanton negligence "must be determined on its own set of facts." *Huffman v. Love*, 427 S.E.2d 357, 360 (Va. 1993). However, the Supreme Court of Virginia has provided that the "intentional violation of a traffic law, without more, will not support a finding of willful and wanton negligence." *Alfonso*, 514 S.E.2d at 618.

In his opposition to Worthy's summary judgment motion, Le Doux claims that Worthy, as a professional truck driver, received specialized training and education instructing him how to operate his tractor-trailer in hazardous conditions. Dkt. 231 at 10–11 (citing Dkt. 233-1 at 33–35, 52). Worthy also received specialized training from Western Express on how to use the Bendix Adaptive Cruise Control, including being instructed by the Bendix Wingman Fusion Operator's Manual that cruise control "must never be used on roads where you can not [sic] drive safely at a steady speed, including . . . poor road conditions (such as gravel or dirt), ice or wet surfaces (wet

7

surfaces may increase the risk of hydroplaning) . . ." Dkt. 231-2 at 4. Le Doux further claims that Worthy received specialized training from Western Express on the appropriate following distance while operating a tractor-trailer. *Id.* Despite this training, Le Doux claims that Worthy used cruise control in the rain and operated his vehicle at 65 mph with 15 to 20 feet of impaired visibility[4] prior to his collisions with Le Doux's and Paul's vehicles. Dkt. 231 at 11–12. Le Doux further claims that Worthy's forward vision was limited by his personal computer tablet being mounted on the windshield of the tractor-trailer. *Id.* at 3, 13.

The record reflects a genuine dispute of material fact concerning Worthy's conduct before the accident. During his deposition, Worthy testified that his visibility was impaired "15, 20 feet ahead" of him, that he didn't recall how long it rained on the day of the accident, and that he adjusted his speed right before he "got into" "the heavy rain." Dkt. 223-1 at 4, 6; Dkt. 233-1 at 69. The Court cannot find as a matter of law how long Worthy was using cruise control and driving at 65 mph with 15 to 20 feet of impaired visibility. To make such a determination, the Court would need to weigh his deposition against other evidence in the record, and would require the Court to make credibility determinations, neither of which is permitted at the summary judgment stage. *See Variety Stores, Inc.*, 888 F.3d at 659. In addition, Le Doux recently filed a motion for sanctions, claiming Worthy intentionally destroyed the data on his computer tablet. Dkt. 283. His motion for sanctions is not yet ripe for decision, and as such, the Court does not know at this time what type of sanction, if any, could be imposed regarding the loss of data on Worthy's computer tablet. That decision could impact a finding as to Worthy's degree of negligence.

---

[4] Defendants contend that Worthy's testimony supports "that his visibility was reduced to 15 to 20 feet only *after* he had entered the heavy rain and had already reduced his tractor-trailer's speed by actively applying the brakes and disengaging cruise control." Dkt. 223 at 6.

Ultimately, reasonable persons might differ regarding whether Worthy's conduct, as alleged by Le Doux, amounted to willful and wanton negligence. And because the record reflects a genuine dispute on Worthy's conduct before the accident, the Court will deny Worthy's summary judgment motion on Plaintiffs' punitive damages claim.

### C. Plaintiff Le Doux's Summary Judgment Motion on Plaintiffs' Willful & Wanton Negligence Claim

Le Doux moves for summary judgment on Plaintiffs' willful and wanton negligence claim against Worthy. Dkt. 232. As stated above, reasonable persons might differ regarding whether Worthy's conduct amounted to willful and wanton negligence, and therefore, the Court will deny Le Doux's summary judgment motion.

### Conclusion

For the above reasons, the Court will deny Defendants' motion for summary judgment on Le Doux's purported contributory negligence, Dkt. 189, and the parties' cross motions for summary judgment on Plaintiffs' punitive damages claim based on Worthy's alleged willful and wanton negligence, Dkts. 165, 232.

It is so **ORDERED**.

The Clerk of Court is directed to send this Memorandum Opinion & Order to all counsel of record.

Entered this 23rd day of March, 2023.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE