CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
3/23/2023
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
      DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| JUDY M. PAUL, *et al.*, | CASE NO. 6:20-cv-51 |
| *Plaintiffs*, | |
| v. | MEMORANDUM OPINION & ORDER |
| WESTERN EXPRESS, INC. *et al.*, | |
| *Defendants*. | JUDGE NORMAN K. MOON |

Plaintiffs Paul and Le Doux sue Defendants Western Express, Inc. and Ervin Joseph Worthy to collect damages for the injuries they sustained during a multi-vehicle accident on Interstate 81. The parties have filed several motions to exclude expert testimony. Below, the Court provides its rulings on each motion.

## Legal Standard

A witness who qualifies as an expert "by knowledge, skill, experience, training, or education, may testify" as to scientific, technical, or other specialized knowledge if it will assist the trier of fact. Fed. R. Evid. 702. Such testimony is only admissible if (1) "the testimony is based upon sufficient facts or data," (2) "the testimony is the product of reliable principles and methods," and (3) "the expert has reliably applied the principles and methods to the facts of the case." *Id.* "[A] court may consider whether the expert witness theory or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a high known or potential rate of error; and (4) is generally accepted within a relevant scientific community." *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195 (4th Cir. 2017) (citation and internal quotation

1

marks omitted); *see Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593–94 (1993). This list of factors is not exhaustive. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

The Supreme Court in *Daubert* concluded that Rule 702 entrusts district courts with a gatekeeping responsibility "to 'ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert*, 509 U.S. at 597). If the expert meets this threshold, criticisms of his or her testimony will go to its weight, not its admissibility. *See Bresler*, 855 F.3d at 195–96. The approach is not limited to scientific testimony but rather to all "testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire*, 526 U.S. at 141 (applying *Daubert* to the testimony of a mechanical engineer).

Although Rule 702 allows for a liberal introduction of relevant expert evidence, courts "must recognize that due to the difficulty of evaluating their testimony, expert witnesses have the potential to 'be both powerful and quite misleading.'" *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (quoting *Daubert*, 509 U.S. at 595). "And, given the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded." *Id.*

## Discussion

### A. Defendants' Partial Motion to Exclude Testimony of Plaintiff Le Doux's Expert, Gregory J. O'Shanick, M.D.

Le Doux has disclosed Dr. O'Shanick, M.D., a neuropsychiatrist, as an expert witness to testify at trial regarding the nature and extent of Le Doux's injuries. Dkt. 172-1. He will testify regarding the past, present, and future treatment of those cognitive injuries. *Id.* Defendants move

2

to exclude his opinion on Le Doux's need for future neurosurgery to install a ventriculo-peritoneal ("VP") shunt. Dkt. 171. Defendants argue the Court should exclude this portion of Dr. O'Shanick's opinion because they claim it is too speculative and unreliable. Dkt. 172 at 2–3.

Under Virginia law, medical expert testimony that is "purely speculative" or "based on a possibility" is inadmissible. *State Farm Mut. Auto. Ins. Co. v. Kendrick*, 491 S.E.2d 286, 287 (Va. 1997) (internal quotation marks omitted).[1] "To be admissible, such medical expert testimony must be rendered to a 'reasonable degree of medical probability.'" *Bitar v. Rahman*, 630 S.E.2d 319, 323 (Va. 2006) (quoting *Pettus v. Gottfried*, 606 S.E.2d 819, 825 (Va. 2005)).

In his report, Dr. O'Shanick stated in relevant part that:

> Mr. LeDoux has suffered a severe [traumatic brain injury] which has been associated with dramatic intracranial structural damage. He currently exhibits extra pyramidal signs which indicate on going [sic] intracranial issues. The structural injuries include the deposition of significant amount of blood products "especially iron" throughout the brain. Mr. LeDoux will develop ongoing scarring within the brain secondary to the processes initiated by this automobile crash. As a result of these changes more likely than not Mr. LeDoux will develop a hydrocephalus which will require neurosurgery for a ventriculo-peritoneal shunt.

Dkt. 172-1 at 66. He also stated that "to a reasonable degree of medical probability the following treatment, [including neurosurgery,] will be reasonable and necessary to treat [Le Doux's] injuries caused by the subject incident." *Id.* at 65.

---

[1] Generally, when a diversity case is heard by a federal district court, the Federal Rules of Evidence control the admissibility of expert witness testimony. *Creekmore v. Maryview Hosp.*, 662 F.3d 686, 690 (4th Cir. 2011). However, "there are circumstances in which a question of admissibility of evidence is so intertwined with a state substantive rule that the state rule . . . will be followed in order to give full effect to the state's substantive policy." *Hottle v. Beech Aircraft Corp.*, 47 F.3d 106, 110 (4th Cir. 1995) (internal quotation marks omitted). Since Defendants are seeking to exclude expert testimony related to damages, which is an essential element of a negligence claim under Virginia law, the Court may consider Virginia law when deciding whether to exclude expert testimony. *See e.g.*, *Stewart v. Peffer*, 985 F.2d 553, *2 (4th Cir. 1993) (considering West Virginia law when reviewing whether a district court properly admitted expert testimony on the issue of future medical expenses).

The Court finds that Dr. O'Shanick's testimony is not speculative. For comparison, in *Kendrick*, an orthopedic surgeon stated at trial that "no surgery was planned" for the plaintiff, but if his conditions were to worsen, "then we would elect to do surgery." 491 S.E.2d at 287. The trial court found that the evidence was sufficient because it indicated that the plaintiff "'might' need surgery in the future." *Id.* But the Supreme Court of Virginia disagreed and held that the trial court erred by allowing the jury to hear the medical opinion because the future surgery was merely suggested and thus "too speculative" to be admitted for the jury. 491 S.E.2d at 287.

Here, Dr. O'Shanick stated that Le Doux "will develop ongoing scarring within the brain" that "will more likely than not" result in Le Doux developing "hydrocephalus which will require neurosurgery for a ventriculo-peritoneal shunt." Dkt. 172-1 at 66. This opinion is much more definite than the trial court's finding that the plaintiff "might" need surgery in *Kendrick*. 491 S.E.2d at 287; *see also Tripiciano v. Hale*, No. 7:13-cv-254, 2014 WL 1653073, at *4 (W.D. Va. Apr. 23, 2014) (holding that expert testimony—stating that the plaintiff "more likely than not" would not have needed surgery if she had a brace—was admissible and amounted to a "reasonable degree of medical probability").

Defendants also claim that the record reflects that Le Doux is resistant to medical assistance and thus there is no evidence that Le Doux would consent to the neurosurgery. Dkt. 172 at 6–8. For instance, Dr. Josh Mleczko, Le Doux's primary care physician, testified that Le Doux has previously refused recommended treatment. *Id.* at 7 (citing Dkt. 172-6); *see* Dkt. 172-3 at 4. However, Le Doux's history of resisting past medical treatment does not support a finding that he would refuse needed neurosurgery in the future. Accordingly, the Court finds that Dr. O'Shanick's opinion on Le Doux's future need for neurosurgery is stated to a "reasonable degree of medical probability." *Bitar*, 630 S.E.2d at 323. Thus, Defendants' partial

motion to exclude Dr. O'Shanick's opinion will be denied. Dkt. 171.

### B. Defendants' Motion to Exclude Plaintiff Le Doux's Medical Experts' Causation Opinions

Defendants also move to exclude the causation testimony of Dr. O'Shanick for failure to delineate which impact from the multi-vehicle accident caused what injury. Dkt. 209 at 2, 11–12.[2] They specifically argue Dr. O'Shanick failed to perform a proper differential diagnosis. *Id.* at 4–6.

A differential diagnosis "is a standard scientific technique of identifying the cause of a medical problem by eliminating the likely causes until the most probable one is isolated." *Westberry*, 178 F.3d at 262. An expert's differential diagnosis does not have to consider "every possible alternative cause of a plaintiff's" injury, but "[a] differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation." *Id.* at 265 (citations omitted). "Thus, if an expert utterly fails to consider alternative causes or fails to offer an explanation for why the proffered alternative cause was not the sole cause, a district court is justified in excluding the expert's testimony." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 202 (4th Cir. 2001).

Here, Dr. O'Shanick provided a differential diagnosis to determine the cause of Le Doux's brain injury and concluded that Le Doux "sustained a severe traumatic brain injury on August 11, 2018 as a result of a multiple impact crash on Interstate 81." Dkt. 226-1 at 34. In making his conclusion, he considered alternative causes for Le Doux's brain injury by stating that Le Doux had "no reported cognitive impairments prior to the date of the crash." *Id.* Thus,

---

[2] Defendants also move to exclude the opinions and testimony of Plaintiff Le Doux's medical expert, Jonathan Carmouche, M.D. Dkt. 209 at 2, 11–12. This part of the motion is now moot because Le Doux has withdrawn Dr. Carmouche as a testifying expert, Dkt. 242.

Dr. O'Shanick conducted a proper differential diagnosis by eliminating causes of Le Doux's brain injury prior to the multi-vehicle accident.

Still, Defendants correctly note that Dr. O'Shanick did not delineate which impact from the multi-vehicle accident caused Le Doux's brain injury. *See* Dkt. 209 at 4–6. However, the Court believes this to be a jury issue. Under Virginia law, "(where) separate and independent acts of negligence of two parties are the direct cause of a single injury to a third person and it is impossible to determine in what proportion each contributed to the injury, either or both are responsible for the whole injury." *Maroulis v. Elliott*, 151 S.E.2d 339, 345 (Va. 1966) (internal citation omitted). As such, the jury will be instructed on Virginia law and will determine, based on the evidence presented at trial, whether it is impossible to determine in what proportion each vehicle impact contributed to Le Doux's brain injury. For these reasons, Defendants' motion to exclude the causation opinions of Dr. O'Shanick will be denied. Dkt. 208.

### C. Defendants' Motion to Exclude Plaintiffs' Experts, Heath Stewart & Steven Greco

Plaintiffs have disclosed Heath Stewart as an expert witness in "collision analysis" and Steven Greco as a "meteorological analyst." Dkt. 200-1 at 3. Defendants move to exclude Mr. Stewart's weather-related testimony and all of Mr. Greco's testimony. Dkt. 199.

The Court first considers whether to exclude the weather-related opinions of Mr. Stewart. In the "weather data analysis" section of his expert report, Mr. Stewart presents graphics that purportedly depict the degree and severity of the weather over Worthy at several points on Interstate 81 prior to the accident. Dkt. 200-3 at 2–6. Mr. Stewart relies on Mr. Greco's weather data for depicting the weather as Worthy was driving. *Id.* In his report, Mr. Greco uses Next Generation Radar ("NEXRAD") to track the precipitation that occurred on August 11, 2018,

from 4:10 p.m. to 5:08 p.m. Dkt. 228-2 at 2–3. This radar "reads at multiple scanning levels every 3-6 minutes (depending on the number of elevation angles)" to generate weather images. *Id.* at 3. Mr. Greco's method appears to be generally accepted within the scientific community. *Id.* at 4.

Defendants argue this portion of Mr. Stewart's testimony should be excluded because his methodology is speculative and flawed. Dkt. 200 at 5–8. The Court agrees. A 3–6-minute gap in scanning the weather is significant when an expert is opining on the weather conditions for a moving vehicle. Adding to this concern, Defendants' expert, James Whelan, P.E., argues that Mr. Stewart's locational data is based on an inaccurate time stamp. *See* Dkt. 200-10 at 14. In other words, Mr. Stewart's proposed testimony compounds weather speculation with location speculation. Since the proposed expert testimony essentially purports to offer the jury real-time, GPS-based weather data, the overlapping of Mr. Stewart's locational data onto Mr. Greco's weather data has "the potential to 'be both powerful and quite misleading.'" *Westberry*, 178 F.3d at 261 (quoting *Daubert*, 509 U.S. at 595). Accordingly, Mr. Stewart's testimony predicting the weather conditions as Worthy was driving is too speculative to be considered reliable information consistent with *Daubert* principles and Rule 702. *See Bryte ex rel. Bryte v. Am. Household, Inc.*, 429 F.3d 469, 477 (4th Cir. 2005) ("*Daubert* aims to prevent expert speculation . . ."). Thus, Mr. Stewart's weather-related testimony is inadmissible.

The Court next considers whether to exclude Mr. Greco's testimony. Plaintiffs disclosed Mr. Greco, a meteorological analyst, to testify as to "any occurrence of precipitation that was present along and around Interstate 81 corridor in Virginia on the afternoon of August 11, 2018." Dkt. 200-4 at 1. Defendants claim that once Mr. Stewart's testimony is excluded, Mr. Greco's testimony becomes cumulative because all the witnesses agree that "the rain was light ahead of

7

the accident, before becoming the heavy wall of water." Dkt. 200 at 8. They also argue that his testimony would potentially confuse the jurors who "could make any number of incorrect assumptions about what they see on the maps." *Id.*

A court "may exclude evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Without Mr. Stewart's testimony or other reliable testimony tying Worthy's location to the weather data, the probative value of Mr. Greco's testimony is significantly reduced. In addition, a jury may place too much weight on Mr. Greco's testimony or attempt to infer Worthy's precise location on the weather maps provided in Mr. Greco's expert report, Dkt. 200-4 at 5. Considering the reduced probative value of his testimony, the Court finds that the risk of unfair prejudice and jury confusion substantially outweighs the probative value of Mr. Greco's testimony. Fed. R. Evid. 403.

For the above reasons, the Court will grant Defendants' motion and will exclude Mr. Stewart's weather-related testimony and Mr. Greco's testimony at trial. Dkt. 199.

### D. Le Doux's Partial Motion to Exclude Defendants' Accident Reconstruction Expert James D. Whelan's Commercial Vehicle Operation Opinions

Defendants have disclosed James D. Whelan as an expert on accident reconstruction. *See* Dkt. 205-4. Le Doux moves to exclude six of Mr. Whelan's conclusions, claiming Mr. Whelan is unqualified to offer testimony on commercial vehicle operation or the appropriate standard of care. Dkt 205 at 6–13.[3] The Court will grant the motion in part by excluding several of Mr.

---

[3] Mr. Whelan has a Bachelor of Science in mechanical engineering and is a Licensed Professional Engineer. Dkt. 205-1 at 2, 5. From 2007 to 2014, he worked as a senior project engineer, which involved trucking and vehicle accident reconstruction. *Id.* at 2. He has

8

Whelan's conclusions.

An expert's testimony must "be connected to existing data by something more than the 'it is so because I say it is so' of the expert." *Holesapple v. Barrett*, 5 F. App'x 177, 180 (4th Cir. 2001). It "must not be based on belief or speculation, and inferences must be derived using scientific or other valid methods." *Small v. WellDyne, Inc.*, 927 F.3d 169, 177 (4th Cir. 2019) (internal quotation marks omitted).

First, Le Doux asks this Court to exclude conclusion number 10 in Mr. Whelan's report, which provides that "Worthy reduced the brake force application during the jackknife event, which is a maneuver consistent with the practices recommended by the Georgia [commercial driver's license ("CDL")] manual." Dkt. 205-2 at 76. The Court finds that Mr. Whelan is permitted to testify about Worthy reducing his brake force during the jackknife event because Mr. Whelan is qualified by his knowledge, experience, and education to provide such testimony. *See* Fed. R. Evid. 702. However, he will not be permitted to testify on direct concerning the Georgia CDL manual, which he may have used to form the basis of his opinion. It goes without saying that the Georgia CDL manual does not set the standard of care for a negligence claim in Virginia. *See generally Litchford v. Hancock*, 352 S.E.2d 335, 336 (Va. 1987) (providing the standard of care for a driver of a motor vehicle under Virginia law). His testimony related to the Georgia CDL manual will not be helpful to the jury, nor will it be relevant for the negligence claim. Thus, Mr. Whelan's testimony related to the Georgia CDL manual is inadmissible. However, if he consulted the manual in forming his opinion, opposing counsel may question him

---

investigated and analyzed accidents involving vehicles, machines, and industrial equipment. *Id.* at 1. He has formal training from Heavy Vehicle Crash Reconstruction (2008), Traffic Accident Reconstruction I & II (2007), and Advanced Crash Reconstruction Utilizing Human Factors (2013) from Northwestern University, and Heavy-Duty Vehicle Air Brake Systems Training (2009) from Bendix. *Id.* at 6.

on cross about the subject.

Second, Le Doux seeks the exclusion of conclusion number 32 in Mr. Whelan's report, which states that "Worthy was keeping a proper lookout and observed the vehicles in front of him." Dkt. 205-2 at 77. The question of whether Worthy had a proper lookout by observing vehicles in front of him is a jury issue because it concerns "everyday knowledge and experience of a lay juror." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) ("Testimony from an expert is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror."). The jury is best positioned to determine from the evidence whether Worthy was keeping a proper lookout and observed the vehicles in front of him on August 11, 2018. *See, e.g.*, *Pitt Ohio Exp., LLC v. Pat Salmon & Sons, Inc.*, 532 F. App'x 439, 442 (4th Cir. 2013) (upholding the district court's exclusion of expert testimony and finding that the court "was well within its discretion when it determined that the jury was best positioned to 'decide from the evidence whether someone was driving too slow or too fast or was otherwise negligent under the conditions'"). Thus, Mr. Whelan's conclusion number 32 is inadmissible.

Third, Le Doux asks this Court to exclude conclusion number 36 in Mr. Whelan's report, which provides that "Worthy applied his brakes less than two seconds after recognizing that there were slow moving vehicles on the roadway and an accident was imminent, which was a reasonable perception-reaction time for an alert driver." Dkt. 205-2 at 77. Mr. Whelan's testimony regarding Worthy applying his brakes is based on his analysis of the dash camera video from Worthy's tractor-trailer and crash data from the Benedix Wingman System. *See* Dkt. 205-2. Mr. Whelan also cited Jeffrey Muttart's *Estimating Driver Response Time* (2005) to support his conclusion that Worthy's braking response was "a reasonable perception-reaction time." Dkt. 205-2 at 74. Mr. Whelan explained that Muttart's research "suggests that drivers, on

10

average, respond to unexpected hazards under poor visibility conditions in approximately 2.5 seconds." *Id.* Because the testimony is based on a reliable foundation and relevant to the negligence claim, any criticism about the testimony goes to the weight, rather than its admissibility. *See Bresler*, 855 F.3d at 195–96. Accordingly, the Court finds that conclusion number 36 is admissible.

Fourth, Le Doux seeks the exclusion of conclusion number 45 in Mr. Whelan's report, which states that "[u]nder the hypothetical scenario that [] Worthy was driving even slower, he increased the opportunity for an accident with trailing vehicles." Dkt. 205-2 at 77. Relatedly, Le Doux asks this Court to exclude conclusion number 46 in Mr. Whelan's report, which provides that "the Kia stopping in the roadway increased the opportunity for an accident." Dkt. 205-2 at 77. To support both conclusions, Mr. Whelan stated that "[r]esearch has shown that the greater the difference between a driver's speed and the average speed of traffic—both above and below that average speed—the greater the likelihood of involvement in a crash." Dkt. 205-1 at 75 (citing David Solomon, *Accidents On Main Rural Highways Related to Speed, Driver and Vehicle*). Mr. Whelan also included Figure 59, titled "Involvement rate by variation from average speed for day and night by Solomon," to support his conclusions. *Id.*

The Court finds that conclusions number 45 and number 46 are inadmissible because they are merely based on speculation. *See Small*, 927 F.3d at 177. Mr. Whelan fails to reliably apply the principles from Solomon's research to the specific facts of this case. *See* Fed. R. Evid. 702 (providing testimony is admissible only if "the expert has reliably applied the principles and methods to the facts of the case"). For instance, he does not consider that Worthy was operating a tractor-trailer while it was raining before drawing his conclusions.

Fifth, Le Doux seeks the exclusion of conclusion number 26 in Mr. Whelan's report,

which states that the "Ford may have struck the rear of the Kia prior to the impact with the Honda." Dkt. 205-2 at 77. In his report, Mr. Whelan stated that "the [event data recorder ("EDR")] from the Kia is the *only way* to determine if the Ford struck the Kia prior to the impact with the Honda." Dkt. 205-2 at 73 (emphasis added). Thus, Mr. Whelan conceded that he cannot determine whether Le Doux's Ford struck Paul's Kia prior to the impact with Hiatt's Honda without the EDR, which is unavailable. As such, Mr. Whelan's conclusion number 26 is inadmissible because it is based merely on speculation. *See Small*, 927 F.3d at 177.

E. **Plaintiff's Motion to Exclude Orthopedic Opinions of Defendants' Expert, Seth Tuwiner, MD**

Defendants have disclosed Seth Tuwiner, M.D., a neurologist, to testify about Le Doux's brain injury as well as Le Doux's orthopedic injuries and his need for future orthopedic medical care. Dkt. 207 at 4. Le Doux seeks to exclude Dr. Tuwiner's orthopedic opinions for lack of qualification. Dkt. 207. Defendants contend that Dr. Tuwiner is qualified to offer orthopedic testimony because he "frequently evaluates patients for the purpose of determining whether he or she requires spinal surgery, and he knows when it is necessary to refer a patient for spinal surgery or similar treatment." Dkt. 221 at 3. At this time, the Court is unable to determine whether Dr. Tuwiner is qualified to testify on orthopedic medical care. The Court will thus defer ruling on the motion until trial, at which point Dr. Tuwiner will be examined in voir dire about his knowledge, skill, experience, training, or education for the Court to determine whether he is qualified to testify on orthopedic medical care.

## Conclusion

For the above reasons, the Court **ORDERS** that:

1. Defendants' partial motion to exclude testimony of Plaintiff Le Doux's expert, Gregory J. O'Shanick, M.D., Dkt. 171, is **DENIED**;

2. Defendants' motion to exclude plaintiff's medical experts' causation opinions, Dkt. 208, is **DENIED**;

3. Defendants' motion to exclude Plaintiffs' experts, Heath Stewart & Steven Greco, Dkt. 199, is **GRANTED**;

4. Plaintiff Le Doux's partial motion to exclude Defendants' expert, James D. Whelan, Dkt. 204, is **GRANTED in part** by excluding part of Mr. Whelan's conclusion number 10 and all of Mr. Whelan's conclusion numbers 26, 32, 45, and 46; and

5. The Court defers ruling on Plaintiff Le Doux's partial motion to exclude orthopedic opinions of Defendants' expert, Seth Tuwiner, M.D., Dkt. 206, until trial.

The Clerk of Court is directed to send this Memorandum Opinion & Order to all counsel of record.

Entered this **23rd** day of March, 2023.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE