CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
3/23/2023
LAURA A. AUSTIN, CLERK
BY: s/ CARMEN AMOS
      DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JUDY M. PAUL, *et al.*, | CASE NO. 6:20-cv-51 |
| Plaintiffs, | |
| v. | MEMORANDUM OPINION & ORDER |
| WESTERN EXPRESS, INC. *et al.*, | |
| Defendants. | JUDGE NORMAN K. MOON |

Defendants Western Express and Worthy seek sanctions against Plaintiff Le Doux for spoliation of cell phone evidence, pursuant to Rule 37(e) of the Federal Rules of Civil Procedure. For the following reasons, Defendants' motion will be granted in part, and as a remedy for the spoliation, the Court will instruct the jury that it is permitted, although not required, to presume that the lost cell phone evidence was unfavorable to Le Doux.

### Background

On August 11, 2018, Paul, Le Doux, and Worthy, who was operating a Western Express tractor-trailer, were involved in a multi-vehicle accident on Interstate 81.

On September 21, 2018, Defense counsel sent a preservation letter to Le Doux's counsel, stating that Le Doux had an "obligation to preserve any and all evidence in his possession, custody, or control that is related in any way to the accident." Dkt. 211-1 at 1. The letter asked Le Doux to "preserve all documents, tangible things, electronically stored information, communications, recordings, videos, photographs, diagrams, sketches, and all other materials, whether electronic or otherwise, related in any way to the accident, including the vehicle he was

1

operating." *Id.* On October 3, 2018, Defense counsel sent another preservation letter, requesting that Le Doux "collect all records, data, and other information from his cellular provider from August 18, 2018, to September 9, 2018, including but not limited to, voicemails, text messages, other electronic messages, app usage information, data usage information, data logs and call logs." Dkt. 220-2 at 1.

On or about October 29, 2018, Le Doux sent his cell phone, which he had in his possession at the time of the accident, to his counsel for preservation (the "first cell phone"). Dkt. 211-2 at 3. After sending his phone, Le Doux started using another cell phone (the "second cell phone"). *Id.*

On August 10, 2020, Le Doux filed a complaint, alleging negligence, negligent hiring, and negligent retention against Defendants, and seeking damages for injuries related to the accident. *See Le Doux v. Western Express, Inc.*, No. 6:20-cv-52, Dkt. 1.

On January 12, 2021, Western Express issued its first set of interrogatories and requests for production to Le Doux. Dkt. 220-3. Western Express requested that Le Doux produce all documents, "email[s], instant messages or text messages [that he or his] agent have sent to or received from any other person or entity pertaining to the [multi-vehicle accident] or any claims for damages arising from the [multi-vehicle accident] including, but not limited to, documents sent to/received from your friends, family, employers . . ." *Id.* at 15. On February 16, 2021, Le Doux responded, but did not produce any text messages or emails from his first cell phone. Dkt. 211 at 2 n.1.

On July 28, 2021, Le Doux's counsel emailed Defense counsel that they had preserved Le Doux's first cell phone, that Defense counsel had not requested the phone so far in discovery, and that they intended to release the first cell phone back to Le Doux because he had requested

2

it. Dkt. 220-4 at 2. In response, Defense counsel expressed that they "would be amenable to [Le Doux's counsel] looking through it and providing any information responsive to the discovery [they had] issued." Dkt. 220-5 at 1.

On September 30, 2021, Le Doux's counsel retained Sensei Enterprises, Inc., a third-party vendor, to retrieve discoverable material on Le Doux's first cell phone. Dkt. 211-3 at 3; Dkt. 220-20 ¶ 3. Sensei was able to retrieve data and provided a call log showing 24 calls from August 11, 2018, through October 12, 2018. Dkt. 220 at 6. Sensei also provided a report of 1,900 text messages from September 6, 2018, through October 12, 2018. *Id.* During discovery, Le Doux produced approximately 480 text messages with his son, 18 text messages with his brother, and 88 text messages with his daughter-in-law. *Id.* Le Doux did not produce 1,300 text messages with his wife because of spousal privilege. *Id.*

In December 2021, Defense counsel requested data from Le Doux's second cell phone. Dkt. 220-6 at 1. Le Doux's counsel responded by objecting to the request as "overly broad, unduly burdensome, irrelevant, and disproportionate" to the case. *Id.* Following a discovery conference, then-Magistrate Judge Robert S. Ballou ordered on April 29, 2022 that Le Doux "produce all non-privileged texts and emails related to the accident from the date of the accident through the date of the filing of these civil actions." Dkt. 135 at 4.

On May 4, 2022, Le Doux's counsel contracted with Sensei to inspect Le Doux's second cell phone. Dkt. 220-20 ¶ 4. Le Doux shipped his second cell phone to Sensei and then replaced it with a new cell phone. Dkt. 211-6 at 3. Sensei determined that the second cell phone contained no text messages or emails from August 11, 2018, to August 10, 2020. Dkt. 211-4 at 1; Dkt. 220-9 at 1. Sensei found messages on Le Doux's second cell phone from December 21, 2021, through April 29, 2022. Dkt. 220-20 ¶ 10. On May 9, 2022, Le Doux's counsel instructed Sensei

to return the second cell phone to Le Doux. Dkt. 220-8 at 1.

On May 19, 2022, Le Doux's counsel told Defense counsel that Le Doux's second cell phone contained no emails or text messages from August 11, 2018, to August 10, 2020. Dkt. 220-9. When Defense counsel inquired about these missing messages, Le Doux's counsel explained that Le Doux "regularly managed his phone texts and emails[] and deleted them after review." Dkt. 211-5 at 1. Le Doux responded that "as far as [he] knows, no other person deleted electronic data on his behalf." Dkt. 211-2 at 4. Le Doux's counsel also emailed Defense counsel and stated that "[i]t is [their] understanding from [their] client that there is no cloud backup." Dkt. 211-7 at 1.

On October 5, 2022, Le Doux's counsel informed Defense counsel that their expert had advised that a "full forensic collection of the phone was compiled using" Cellebrite UFED Touch 2 hardware and requested that Defense counsel provide a "protocol for this 'deletion analysis' that [they] would like performed, so that [Le Doux's counsel] can present this to [their expert]." Dkt. 220-12; *see also* Dkt. 220-20 ¶ 5. On October 28, 2022, Defense counsel filed a joint statement with the Court, stating that their "forensic examiner informed [them that they] will probably not need the actual phone." Dkt. 220-13 at 4. On that same day, Defense counsel stated in an email to Le Doux's counsel that this proposal protocol "assumes [they] will not need the physical [second cell] phone and can run it based on the Cellebrite data." Dkt. 220-14 at 1.

On November 8, 2022, Defense counsel asked to analyze Le Doux's second cell phone to conduct a deletion analysis of it. Dkt. 220-15 at 3. They alleged that Le Doux's expert used "a less capable version of the Cellebrite software when he made the forensic image of the phone," and requested that their forensic examiner conduct an analysis to determine when the data was deleted. *Id.* On that same day, Defense counsel requested a hearing on the issue of whether

4

Defendants were entitled to conduct an inspection of the second cell phone. Dkt. 220-16.

On November 9, 2022, then-Magistrate Judge Ballou held a conference call and instructed Le Doux to submit his second cell phone for forensic analysis under a protocol to be decided by the parties. On November 18, 2022, Le Doux's counsel emailed Defense counsel that:

> After our informal conference with Judge Ballou, we contacted our client to arrange the inspection of the second cell phone previously imaged by our expert. Mr. Le Doux informed us that after receiving the phone back from our expert, he discarded it and no longer has the phone in his possession.

Dkt. 211-8 at 1. Le Doux's counsel continued by stating that they were happy to "continue working with [Defense counsel] on a protocol to conduct the 'deletion analysis' using the image of the phone captured by our expert." *Id.*

On November 28, 2022, Worthy issued discovery asking for the date that Le Doux discarded his second cell phone. Dkt. 211-6 at 3. Le Doux objected to the interrogatory for seeking information that was "unduly burdensome" and "not necessary or proportional to the needs of the case in light of the already produced material." *Id.* His response continued by explaining that he had obtained a third cell phone after sending the second cell phone to the third-party vendor for analysis. *Id.* Once he received his second cell phone back from the vendor, he "understood that the collection of all data from the second phone had been performed, and that there was no request from [either Defendant] that the second phone continue to be preserved after the analysis, so he disabled the devise and discarded it in the trash." *Id.*

### **Legal standard**

"Spoliation refers to the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."

*Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (internal quotation marks omitted). Spoliation is governed by both the Federal Rules of Civil Procedure as well as the inherent authority possessed by federal courts.[1] *Id.*

Rule 37(e) of the Federal Rules of Civil Procedure provides the legal framework for evaluating whether a party failed to preserve electronically stored information ("ESI") for another's use in litigation. *See Jenkins v. Woody*, No. 3:15-cv-355, 2017 WL 362475, at *12, *14 (E.D. Va. Jan. 21, 2017). Under Rule 37(e), a movant must satisfy four threshold requirements before a court decides if any spoliation sanction is appropriate: (1) ESI should have been preserved; (2) ESI was lost; (3) the loss was due to a party's failure to take reasonable steps to preserve the ESI; and (4) the ESI cannot be restored or replaced through additional discovery. *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018); Fed. R. Civ. P. 37(e).

If the movant makes the threshold showing under Rule 37(e), the "court must then consider whether the movant has established one of two options that would permit imposing sanctions." *Knight v. Boehringer Ingelheim Pharma., Inc.*, 323 F. Supp. 3d 837, 845 (S.D. W. Va. 2018); *see* Fed. R. Civ. P. 37(e)(1)-(2). "First 'upon finding prejudice to another party from loss of the information, [the court] may order measures no greater than necessary to cure the prejudice.'" *Thompson v. Clarke*, No. 7:11-cv-111, 2019 WL 4039634, at *3 (W.D. Va. Aug. 27,

---

[1] A court may impose spoliation sanctions pursuant to its inherent authority when a party shows: "(1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind;' and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it." *Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, 219 F.R.D. 93, 101 (D. Md. 2003).

2019) (quoting Fed. R. Civ. P. 37(e)(1)). "Second, and 'only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation,' the court may presume that the lost information was unfavorable to the party who lost it, instruct the jury that it may or must so presume, or dismiss the action or enter a default judgment." *Id.* (quoting Fed. R. Civ. P. 37(e)(2)).

## Discussion

Defendants move for sanctions against Le Doux for spoliation of ESI pursuant to Rule 37(e). Dkt. 210. Defendants specifically claim that Le Doux intentionally deleted text messages and emails on his second cell phone from August 11, 2018, to August 10, 2020, and discarded his second cell phone before Defendants could have their own expert conduct a deletion analysis on the phone. *See* Dkt. 211.

### A. Application of Rule 37(e)

Before deciding if a spoliation sanction is appropriate, the Court must determine whether Defendants have satisfied the four threshold requirements for Rule 37(e) to apply to the cell phone evidence. *See Steves & Sons*, 327 F.R.D. at 104.

#### a. First Requirement: Duty to Preserve

Whether Le Doux had a duty to preserve under Rule 37(e) turns on: 1) whether Le Doux should have reasonably anticipated litigation; and 2) whether he reasonably should have known that the evidence at issue might be *relevant* to such litigation. *See Steves & Sons*, 327 F.R.D. at 105. "Relevance in the context of spoliation is somewhat more stringent than the standard provided by Federal Rule of Evidence 401." *E.I. Du Pont De Nemours & Co. v. Kolon Indus.,*

*Inc.*, 2011 WL 1597528, at *12 (E.D. Va. Apr. 27, 2011). With regard to the duty to preserve, courts have held that "lost or destroyed evidence is relevant if 'a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.'" *Id.* (quoting *Thompson*, 219 F.R.D. at 101).

      Le Doux had a duty to preserve the cell phone evidence. First, he reasonably anticipated litigation when he obtained the second cell phone on October 29, 2018, because prior to that date, he had obtained counsel and received two preservation letters. *See* Dkt. 211-1 at 1; Dkt. 211-2 at 3; Dkt. 220-2 at 1.[2] Second, he reasonably should have known that the text messages and emails from August 11, 2018, to August 10, 2020, on the second cell phone might be relevant to the foreseeable litigation. For instance, on text messages produced from the first cell phone, Le Doux discussed the extent of his injuries and damages with his son. *See* Dkt. 237-2 at 3 (Le Doux texting his son that "I feel fine no real pain," to which his son responded, "[d]on't get into that, your lawyer isn't happy that [Kenneth Murphy, the passenger in Le Doux's car at the time of the accident,] says he had no pain and doesn't want to go to another Doctor."); Dkt. 211-11 (Le Doux texting his son that if he can "[c]ollect from the guy who hurt me and maybe all of us can retire... hahaha."). Based on these messages, a reasonable factfinder could conclude that the lost electronic communications would have been favorable to Defendants on the issues of Le Doux's injuries and damages.

---

[2] Le Doux argues that he did not have a duty to preserve the electronic communications from September 9, 2018, to August 10, 2020, because Defense counsel had sent a follow-up preservation letter narrowing the scope of preserving Le Doux's cell phone records to August 10, 2018, through September 9, 2018. *See* Dkt. 220 at 11. However, the duty to preserve is not determined based on the dates recorded in a preservation letter. Rather, a court must consider: 1) whether the party should have reasonably anticipated litigation; and 2) whether the party reasonably should have known that the evidence at issue might be relevant to such litigation. *See Steves & Sons*, 327 F.R.D. at 105. Both of which are met here.

b. *Second Requirement: ESI is lost*

For the second requirement, the record supports, and Le Doux does not dispute, that Le Doux's third-party vendor was unable to retrieve any electronic communications from August 11, 2018, to August 10, 2020, on the second cell phone, and that after the vendor's analysis, the second cell phone was discarded. Defendants, however, have obtained non-privileged text messages from September 6, 2018, to October 12, 2018, on Le Doux's first cell phone, which means that such messages are not lost and therefore not subject to Rule 37(e). Accordingly, the Court finds that the emails from August 11, 2018, to August 10, 2020, and text messages from August 11, 2018, to September 5, 2018, and from October 13, 2018, to August 10, 2020, on Le Doux's second cell phone are lost.

c. *Third Requirement: Failure to Take Reasonable Steps to Preserve*

Under the third requirement of Rule 37(e), "the duty to preserve is not meant to impose an unreasonable burden on parties anticipating litigation; they need not 'preserve every shred of paper, every e-mail or electronic document, and every backup tape.'" *Jenkins*, 2017 WL 362475, at *15 (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003)). Still, a party generally "must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Zubulake*, 220 F.R.D. at 218. "More or less might be required for preservation in unusual cases, but those principles reflect the standard reasonableness framework." *Steves & Sons, Inc.*, 327 F.R.D. at 108.

Here, Le Doux admits that he deleted text messages and emails on his second cell phone, that he did not have cloud storage to back-up those messages, and that his third-party vendor was unable to retrieve the electronic communications from August 11, 2018, to August 10, 2020 on his second cell phone. Dkt. 211-5 at 1; Dkt. 211-4 at 1; Dkt. 220-9 at 1. The record does not

support that Le Doux took any reasonable steps to preserve the lost electronic communications on his second cell phone.

In addition, Le Doux failed to take reasonable steps to preserve the second cell phone. After Le Doux's third-party vendor determined that the second cell phone contained no text messages or emails from August 11, 2018, through August 10, 2020, Le Doux's counsel told the vendor to send the phone to Le Doux. Dkt. 211-4 at 1; Dkt. 220-9 at 1; Dkt. 220-8 at 1. Even though Defense counsel did not request the second cell phone until November 8, 2022, Dkt. 220-15 at 3, Le Doux's counsel should have taken steps to preserve the phone after learning that the electronic communications on it were unretrievable. Such steps could have included asking the third-party vendor to send the second cell phone to them for preservation, requesting Le Doux to preserve the phone, or contacting Defense counsel to see if they would like access to the phone before allowing it to be sent to Le Doux.

    *d.  Fourth Requirement: Information Cannot be Restored or Replaced*

"Information is lost if it is irretrievable from another source." *Mod. Remodeling, Inc. v. Tripod Holdings, LLC*, No. 19-cv-1397, 2021 WL 3852323, at *8 (D. Md. Aug. 27, 2021) (citing *Steve and Sons, Inc.*, 327 F.R.D. at 107; Fed. R. Civ. P. 37, Comm. Notes on Rules–2015 Amend.). Courts have found that a party has made a good-faith effort to replace or restore ESI when he has issued subpoenas, engaged in forensic analysis, or sent discovery requests encompassing the documents "in an effort to recover what [a plaintiff] destroyed." *GMS Indus. Supply, Inc. v. G&S Supply, LLC*, No. 2:19-cv-324, 2022 WL 853626, at *6 (E.D. Va. Mar. 22, 2022); *see also Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 235–36 (D. Minn. 2019). In contrast, courts have found insufficient evidence of loss where a moving party, for example, failed to show any attempts to directly retrieve the lost electronic communications. *See Mod.*

10

*Remodeling, Inc*, 2021 WL 3852323, at *9.

  Here, Defendants have shown attempts to directly retrieve the lost cell phone evidence. Defendants requested data from Le Doux's second cell phone, Dkt. 220-6 at 1, and after Le Doux rejected the request as too broad, they sought a discovery order requiring the production of such evidence, which then-Magistrate Judge Ballou granted, Dkt. 135 at 4. Defendants also requested to perform a deletion analysis on the second cell phone, and following a conference call, Judge Ballou instructed Le Doux to turn over the second cell phone to Defendants for that purpose. Dkt. 220-15 at 3. However, shortly after this instruction, Defendants learned that the second cell phone had been discarded, and as such, their expert was unable to perform a deletion analysis on the phone. The Court further notes that Defendants are unable to search cloud storage for the lost electronic communications because Le Doux did not use cloud storage to back-up his messages. *See* Dkt. 211-7 at 1.

  Le Doux contends that Defendants could have subpoenaed Le Doux's son, daughter-in-law, and brother, who were the primary people he communicated with, for any text messages or emails. Dkt. 220 at 12–13.[3] However, issuing subpoenas against each of these individuals would likely only result in Defendants receiving pieces of the lost electronic communications. *See, e.g.*, *Paisley Park Enters., Inc.*, 330 F.R.D. at 235–36 (finding missing text messages cannot be replaced or restored by other sources, in part, because at most, the plaintiffs could only obtain

---

[3] Le Doux also claims that Defendants could have deposed or re-deposed these individuals regarding any potential electronic communication with Le Doux. Dkt. 220 at 13. However, the Court rejects this argument because testimony regarding the content of text messages and emails is not a valid substitute for copies of the actual text messages and emails. Le Doux further claims that "the destruction of the phone did not cause any lost ESI" because the second cell phone had been imaged and that imaged data had been provided to Defendants. *Id.* at 19. However, analyzing the imaged data is not a way to retrieve the lost ESI in this case, because it is an image of the second cell phone, which did not contain any of the lost electronic communications.

11

"'scattershot texts and [e-mails],' rather than 'a complete record of defendants' written communications from defendants themselves'") (quoting *First Fin. Sec., Inc. v. Lee*, No. 14-cv-1843, 2016 WL 881003, at *5 (D. Minn. Mar. 8, 2016)). Accordingly, in light of the steps taken by Defendants to retrieve the lost cell phone evidence through discovery requests, discovery orders, and attempted forensic analysis, the Court finds that it was not necessary for Defendants to subpoena these individuals in order to show that the information cannot be restored. *See GMS Indus. Supply, Inc.*, 2022 WL 853626, at *5 ("Irreplaceability does not require a party to pursue every possible avenue for replacing or restoring the ESI, but it must show that it made some good-faith attempt to explore its alternatives before pursuing spoliation sanctions.").

Based on a review of the record, Defendants made good faith efforts to obtain the lost cell phone evidence, and such efforts have revealed that the lost evidence cannot be restored or replaced through additional discovery. Accordingly, the Court finds that spoliation occurred, and that Rule 37(e) applies to the lost cell phone evidence.

### B. Sanctions under Rule 37(e)(2)

Even after finding that spoliation occurred under Rule 37(e), the Court may only impose sanctions if it finds *either* (1) prejudice to another party from the loss of information under Fed. R. Civ. P. 37(e)(1) or (2) that the party acted with intent to deprive another party of the information's use in litigation under Fed. R. Civ. P. 37(e)(2). "The Fourth Circuit has not spoken about the level of intent that a court must find to impose a sanction under Rule 37(e)(2)." *Steves & Sons, Inc.*, 327 F.R.D. at 110. However, "[n]egligent or even grossly negligent behavior" will not satisfy Rule 37(e)(2). *Brittney Gobble Photography, LLC v. Sinclair Bd. Grp., Inc.*, No. 18-cv-3403, 2020 WL 1809191, at *4 (D. Md. Apr. 9, 2020). In determining whether Le Doux had

12

the requisite intent to deprive, the Court may consider the entirety of Le Doux's "actions, or lack thereof." *Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co.*, No. 15-cv-2926, 2019 WL 5694256, at *11 (E.D.N.Y. July 22, 2019) (inferring an intent to deprive information from the defendants because the plaintiff delayed implementing preservation procedures for three years despite being aware of his duty to preserve the evidence and joked about "throwing out and burning computer backup tapes").

Here, it is undisputed that Le Doux deleted electronic communications on his second cell phone and discarded his second cell phone. Furthermore, several pieces of evidence support that he destroyed this evidence to intentionally deprive Defendants of its use in litigation. First, while Le Doux claims he routinely deleted text messages and emails on his phone, his treatment of his first cell phone discredits such a claim. From the first cell phone, Le Doux retrieved 1,900 text messages sent and received during a 36-day period, but from his second cell phone, Le Doux produced *no* text messages or emails from August 11, 2018, to August 10, 2020. Thus, Le Doux did not delete text messages or emails on his first cell phone—contradicting his claim that he routinely deleted electronic communications.[4] Second, Le Doux deleted text messages and emails on his second cell phone *after* he was informed that his counsel was preserving his first cell phone and thus reasonably understood that his electronic communications may be produced during discovery.

Third, Le Doux's third-party vendor was able to retrieve electronic communications on

---

[4] Even if Le Doux routinely deleted his text messages and emails on his phone, Le Doux's counsel could have taken steps to advise their client about preserving the electronic communications on his second cell phone. *See Steves & Sons, Inc.*, 327 F.R.D. at 108 ("[A] party generally must suspend its routine document retention/destruction policy and put in place a litigation hold' to ensure the preservation of relevant documents.") (internal quotation marks omitted).

13

Le Doux's second cell phone from December 21, 2021, through April 29, 2022, which were communications that occurred outside the discovery order. Dkt. 220-20 ¶ 10; Dkt. 135 at 4 (Then-Magistrate Judge Ballou ordering Le Doux to "produce all non-privileged texts and emails related to the accident from [August 11, 2018, the date of the accident] through [August 20, 2020, the date of the filing of the civil action]."). Thus, this evidence not only contradicts Le Doux's claim that he routinely deleted electronic communications on his cell phone, but it also gives rise to the inescapable inference that Le Doux purposefully deleted text messages and emails sent and received during the time period covered by Judge Ballou's order. Considering that Le Doux deleted and discarded cell phone evidence and that circumstantial evidence supports that he did this to deprive Defendants of its use in litigation, the Court concludes that sanctions are appropriate for Le Doux's spoliation.[5] *See Thompson*, 2019 WL 4039634, at *3.

The Court next considers what type of sanctions are appropriate. After "finding a party acted with the intent to deprive another party of the information's use in the litigation," a court may "[1] presume the information was unfavorable, [2] instruct the jury that it may or must presume the information was unfavorable, or [3] dismiss the action or enter a default judgment." *Mod. Remodeling, Inc.*, 2021 WL 3852323, at *15 (citing Rule 37(e)(2)). As provided in the 2015 Amendment to Rule 37, courts "should exercise caution" in using the sanctions under Rule 37(e)(2). "The remedy should fit the wrong, and the severe measures authorized by this subdivision should not be used when the information lost was relatively unimportant or lesser

---

[5] The Court does not need to find that Defendants were prejudiced by the loss of the cell phone evidence. "This is because the finding of intent required by [Rule 37(e)(2)] can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position. Subdivision (e)(2) does not require any further finding of prejudice." Fed. R. Civ. P. 37, Comm. Notes on Rules–2015 Amend.

14

measures . . . would be sufficient to redress the loss." Fed. R. Civ. P. 37, Comm. Notes on Rules–2015 Amend.

Defendants' requested remedy of dismissing the case would not serve the remedial rationales underlying the spoliation doctrine. *See Jenkins*, 2017 WL 362475, at *18. This case centers on a multi-vehicle accident, in which both parties have produced expert witnesses to testify about the extent of Le Doux's injuries and damages. So, while the cell phone evidence may have been relevant and favorable to Defendants on the issues of Le Doux's injuries and damages, it is not the only evidence supporting their defense, and as such, dismissal of the case would be disproportionately harsh to Le Doux.

Yet, as discussed above, Le Doux reasonably knew that the lost evidence would be relevant to the litigation and willfully took actions to delete the electronic communications on the second cell phone and discard the phone. *See Sampson v. City of Cambridge*, 251 F.R.D. 172, 181 (D. Md. 2008) (noting that a party seeking an adverse-inference instruction as a spoliation sanction must show that the responsible party "acted either willfully or in bad faith in failing to preserve relevant evidence"). Accordingly, the Court finds that a permissive adverse inference instruction against Le Doux is proportionate to the prejudice and harm experienced by Defendants. The Court will thus instruct the jury that it is permitted, although not required, to presume that the lost cell phone evidence was unfavorable to Le Doux.

## Conclusion

For the above reasons, the Court **GRANTS in part** Defendants' motion for sanctions for the cell phone evidence against Le Doux, Dkt. 210, and finds that a permissive adverse inference instruction against Le Doux is warranted at trial. The parties may submit proposed language for

such instruction in their proposed jury instructions.

It is so **ORDERED**.

The Clerk of Court is directed to send this Memorandum Opinion & Order to all counsel of record.

Entered this 23rd day of March, 2023.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE