UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| ANDRE G.H. LE DOUX, V,<br><br>*Plaintiff,*<br>v.<br><br>WESTERN EXPRESS, INC. *et al.*,<br><br>*Defendants.* | CASE NO. 6:20-cv-51<br><br>MEMORANDUM OPINION<br>& ORDER<br><br><br>JUDGE NORMAN K. MOON |

Plaintiff Le Doux moves for sanctions against Defendants for intentional spoliation of data on Defendant Worthy's Samsung SM-T350 tablet ("personal tablet"). For the following reasons, Plaintiff's motion will be granted, and as remedy for the spoliation, the Court will instruct the jury that it is permitted, although not required, to presume that the lost data on his personal tablet was unfavorable to Worthy.

**Background**

On August 11, 2018, Paul, Le Doux, and Worthy, who was operating a Western Express tractor-trailer, were involved in a multi-vehicle accident on Interstate 81.

On September 4, 2018, Plaintiff's counsel sent a preservation letter to Defendants, requesting that they preserve any personal computers used by Western Express's employees, "computer generated media," and "bit-by-bit 'mirror' evidentiary image copy of the storage media of each and every personal computer." Dkt. 283-6 at 3, 6, 9. On September 24, 2018, Plaintiff's counsel sent another preservation letter to Defendants, requesting the preservation of

1

electronically stored information ("ESI") from the Western Express tractor-trailer, including the crash video and GPS data. Dkt. 283-7. It provides in relevant part the following:

> I understand that your driver, Mr. Worthy had a video device that captured the crash. Please preserve that video as we would like to review a copy of that video, prior to the inspection. My research has indicated that this vehicle may have had the Rand McNally GPS system, please preserve that data. I also understand that this truck may have had a collision avoidance or collision mitigation system. Please provide the make and model of that system, prior to the inspection and preserve any data associated with that device. Lastly, I understand that this tractor was equipped with an Omnitracs device. Please be sure that device and any of its data is preserved as well. Preservation of the GPS records and other data from that system and other sources were covered in my original spoliation letter. **If you have any questions regarding the relevance of a document, data or other item of evidence related to this crash and your driver, I request that you err on the side of caution and preserve it.**

Dkt. 283-7 at 1 (emphasis added). Defendants preserved and produced the dash camera video, Omnitracs data, and the GPS data from the tractor-trailer. Dkt. 307 at 4. The tractor-trailer was inspected by the parties and their experts in October 2018. *Id.* At that time, Defense counsel claims that they were "unaware of the existence of [any tablets mounted on Worthy's windshield] or that Plaintiff was interested in inspecting them." *Id.*

On December 9, 2020, Plaintiff's counsel emailed Defense counsel "to clarify a few points regarding, what appears from disclosed photographs to be, **a silver colored personal computer/computer tablet** mounted in the windshield or on the dashboard of [] Worthy's cab." Dkt. 307-2 at 4 (emphasis added). Plaintiff's counsel asked for Defense counsel to "confirm the location and condition of this personal computer tablet, as the plaintiffs would like to soon have an inspection conducted to retrieve the computer generated media, electronic data and storage media, held on and communicated from the on-board device which we assumed was preserved pursuant to the letter of preservation dated on Sept. 4, 2018." *Id.* Several minutes later, Defense counsel responded and asked that Plaintiff's counsel provide a picture of the referenced tablet, so

2

they could inquire about the correct device. *Id.* Plaintiff's counsel emailed "a zoomed in, but not enhanced, snip of one of a couple of photographs," which he stated showed the tablet "depicted in the middle of the windshield." Dkt. 307-2 at 3. Defense counsel stated they couldn't "see anything in that image" and asked for Plaintiff's counsel to send another image. *Id.* On December 10, 2020, Plaintiff's counsel noted that they would "have another picture pulled to see if it presents a better image, but [the tablet is] circled in red." *Id.* at 1. Below is the picture attached in the email. *Id.* at 1, 2.



On December 16, 2020, Plaintiff's counsel sent a follow-up email, inquiring about "the identification and location of **the ipad/tablet/personal handheld computer device** mounted in the windshield of [] Worthy's tractor trailer on the day of the crash." Dkt. 283-1 at 1 (emphasis added). Plaintiff's counsel continued by providing:

3

> If in fact it was an ipad/tablet/personal handheld computer device depicted in the windshield on the day of the crash, we would need to set up a time, date, and location for the plaintiff's retained experts to personally conduct the download in accordance with an agreed upon protocol.

*Id.* Defense counsel responded that "[t]here was nothing mounted on the windshield of the truck" and that their clients have "advised the driver did not have a tablet or screen, etc." *Id.*

On December 18, 2020, Defense counsel emailed Plaintiff's counsel to correct the information provided in their December 16, 2020 email. Dkt. 283-2. They stated that after showing Worthy the picture sent by Plaintiff's counsel, Worthy confirmed that the tablet mounted on his dash was his Rand McNally GPS ("GPS tablet") and that it was "not on at the time of the accident because [] he knew where he was going." *Id.*

On August 18, 2021, Defense counsel emailed Plaintiff's counsel that Worthy was "not in possession of the GPS tablet," which they had already disclosed during discovery. Dkt. 307-4 at 2. On August 25, 2021, Plaintiff's counsel asked a series of questions about Worthy's tablet, such as where and who was in possession of it and what steps were taken to preserve the tablet. *Id.* at 1–2. On August 31, 2021, Defense counsel responded that they had confirmed with Worthy that he had "sold the tablet sometime in 2018 and ha[d] no idea who he sold it to." Dkt. 283-3 at 1.

On March 10, 2022, during his deposition, Plaintiff's counsel asked Worthy questions about his GPS tablet. Dkt. 283-4 at 171. Worthy confirmed his GPS tablet was mounted on the windshield of the tractor-trailer. *Id.* He stated that the GPS tablet had other things besides GPS software on it. *Id.* at 173.

4

Then, Plaintiff's counsel produced a zoomed-in image of the windshield of the tractor-trailer. *Id.* Below is the picture produced.



After showing the image, Worthy's disposition proceeded in relevant part:

> Q: Does this picture fairly and accurately represent the tablet you had mounted there, that you contend is a Rand McNally GPS tablet?
>
> A: That's not the tablet.
>
> Q: Is that another tablet?
>
> A: Yes.
>
> Q: Did somebody else mount that tablet in your truck?
>
> A: Me.
>
> Q: You mounted that tablet in your truck?
>
> A: Yes.
>
> **Q: Under oath today, is it your testimony that it's not a Rand McNally GPS tablet**

**mounted, but rather a different tablet mounted?**

A: Yes.

Q: Was that tablet a Samsung Galaxy Tab A 8.0?

A: I believe so.

**Q: How long did you have that tablet?**

**A: I still have it to this day.**

Q: Have you ever been asked to produce that to anyone?

A: No.

Q: Have you ever been asked --

. . .

Q: [] Have you ever been asked by anyone to preserve that tablet?

A: No.

Q: Has anyone ever talked to you about that tablet?

A: No.

. . .

Q: [] Does it still work?

A: Yes.

Q: And you can access it?

A: Yes.

Q: Does it have a camera function on it?

A: Yes.

Q: Was that camera function in use on the day of the crash?

A: No.

**Q: Did you, at any time, use that tablet while driving?**

**A: No.**

Q: You never -- you weren't using that tablet at all while driving?

A: No.

**Q: It's your testimony today that data was never brought off of that tablet, it was never used in any shape, form, or fashion on the date of August 11, 2018?**

**A: Correct. It had no cellular service.**

Q: And you weren't using it for any other purpose?

A: Yes.

Q: What purpose were you using it for?

A: Music.

Q: What else?

A: That's it.

Q: Music alone?

A: Yes.

Q: Are you -- did you -- what carrier did you have for that tablet, that Samsung Galaxy Tab A?

A: I just told you, it had no cellular service.

Q: It was not equipped with cellular service is your position?

A: No.

Q: Okay. I'm going to ask you to provide that to your attorney, so we can coordinate an inspection of that tablet, okay? So I don't want you to do anything with that tablet.

[Defense counsel]: Don't destroy the tablet. Maintain the tablet. Don't delete anything on it.

> **THE WITNESS: The tablet's been deleted.**
>
> **Q: [] When did you delete it?**
>
> **A: When I gave it to my girlfriend.**
>
> **Q: And when did you do that? What date did you do that?**
>
> **A: In 2021.**
>
> **Q: Sometime beginning of the year or --**
>
> **A: Beginning.**
>
> **Q: Does she still have the tablet?**
>
> **A: Yes.**
>
> Q: All right. I'm going to ask you to tell her to preserve it, to get your hands on it, and provide it to defense counsel, okay?

*Id.* at 174–80 (emphases added).

On June 29, 2022, Plaintiff's counsel submitted Worthy's personal tablet to Digital Shield, Inc. for a digital forensic examination. Dkt. 283-11 at 4. Joseph Church, an analyst for Digital Shield, found most of the information on the tablet prior to June 2021 missing except for the timestamps of calendar events that existed before 2021. *Id.* at 6. Mr. Church provided that the information on the device prior to June 2021 "appears to have been removed from the device" and thus did not "contain any data which [was] relevant to the data and time of incident." *Id.* at 6. He also provided that the Samsung SM-T350, as a device, is capable of various items, including but not limited to connecting to Wi-Fi, Bluetooth connections, VPN access, taking pictures and videos, email, games, social media, playing movies and music, and YouTube. *Id.* at 7.

### Legal standard

"Spoliation refers to the destruction or material alteration of evidence or the failure to

preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (internal quotation marks omitted). Spoliation is governed by both the Federal Rules of Civil Procedure as well as the inherent authority possessed by federal courts.[1] *Id.*

Rule 37(e) of the Federal Rules of Civil Procedure provides the legal framework for evaluating whether a party failed to preserve ESI for another's use in litigation. *See Jenkins v. Woody*, No. 3:15-cv-355, 2017 WL 362475, at *12, *14 (E.D. Va. Jan. 21, 2017). Under Rule 37(e), a movant must satisfy four threshold requirements before a court decides if any spoliation sanction is appropriate: (1) ESI should have been preserved; (2) ESI was lost; (3) the loss was due to a party's failure to take reasonable steps to preserve the ESI; and (4) the ESI cannot be restored or replaced through additional discovery. *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018); Fed. R. Civ. P. 37(e).

If the movant makes the threshold showing under Rule 37(e), the "court must then consider whether the movant has established one of two options that would permit imposing sanctions." *Knight v. Boehringer Ingelheim Pharma., Inc.*, 323 F. Supp. 3d 837, 845 (S.D. W. Va. 2018); *see* Fed. R. Civ. P. 37(e)(1)-(2). "First 'upon finding prejudice to another party from loss of the information, [the court] may order measures no greater than necessary to cure the prejudice.'" *Thompson v. Clarke*, No. 7:11-cv-111, 2019 WL 4039634, at *3 (W.D. Va. Aug. 27,

---

[1] A court may impose spoliation sanctions pursuant to its inherent authority when a party shows: "(1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind;' and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it." *Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, 219 F.R.D. 93, 101 (D. Md. 2003).

9

2019) (quoting Fed. R. Civ. P. 37(e)(1)). "Second, and 'only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation,' the court may presume that the lost information was unfavorable to the party who lost it, instruct the jury that it may or must so presume, or dismiss the action or enter a default judgment." *Id.* (quoting Fed. R. Civ. P. 37(e)(2)).

## Discussion

### A. Threshold requirements of Rule 37

The Court must first determine whether Plaintiff has satisfied the four threshold requirements for Rule 37(e) to apply to the personal tablet's data. *See Steves & Sons*, 327 F.R.D. at 104.

#### 1. First Requirement: Duty to Preserve

Whether Worthy had a duty to preserve under Rule 37(e) turns on: 1) whether Worthy should have reasonably anticipated litigation; and 2) whether he reasonably should have known that the evidence at issue might be *relevant* to such litigation. *See Steves & Sons*, 327 F.R.D. at 105. "Relevance in the context of spoliation is somewhat more stringent than the standard provided by Federal Rule of Evidence 401." *E.I. Du Pont De Nemours & Co. v. Kolon Indus., Inc.*, 2011 WL 1597528, at *12 (E.D. Va. Apr. 27, 2011). With regard to the duty to preserve, courts have held that "lost or destroyed evidence is relevant if 'a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.'" *Id.* (quoting *Thompson*, 219 F.R.D. at 101).

Worthy had a duty to preserve the data on his personal tablet. First, he reasonably anticipated litigation because Plaintiff's counsel sent two preservation letters in September 2018.

10

Dkts. 283-6; 283-7. Second, Worthy reasonably should have known that the data on his personal tablet mounted on his windshield at the time of the multi-vehicle accident might be relevant to the foreseeable litigation.

Defendants contend that Plaintiff has not shown that Worthy reasonably should have known that his personal tablet's data might be relevant to the foreseeable litigation because Plaintiff's counsel did not ask about the personal tablet until Worthy's March 2022 deposition. Dkt. 307 at 11. However, Worthy was on notice that Plaintiff's counsel was interested in the personal tablet. In December 2020, Plaintiff's counsel emailed Defense counsel about the "**ipad/tablet/personal handheld computer device** mounted in the windshield of [] Worthy's tractor trailer on the day of the crash" and Defense counsel showed Worthy the picture depicting the tablet mounted on his windshield. Dkt. 283-1 at 1; Dkt. 283-2 at 1. At that time, Worthy represented to his counsel that this picture showed a GPS tablet mounted on his windshield. Dkt. 283-2 at 1. So, while Defense counsel may not have known about the personal tablet until the March 2022 deposition, Worthy reasonably should have known that the personal tablet's data might be relevant to the foreseeable litigation because he received several preservation letters about preserving electronic devices and his counsel told him that Plaintiff's counsel was asking about the tablet mounted on his windshield in December 2020, which he later confirmed was his personal tablet.

    2. *Second Requirement: ESI is lost*

As to the second requirement, Digital Shield during its digital forensic analysis found no data, except for the calendar events' timestamps, before June 2021 on Worthy's personal tablet. Thus, the data on his personal tablet, except for calendar events' timestamps, is lost.

11

*3. Third Requirement: Failure to Take Reasonable Steps to Preserve*

Under the third requirement of Rule 37(e), "the duty to preserve is not meant to impose an unreasonable burden on parties anticipating litigation; they need not 'preserve every shred of paper, every e-mail or electronic document, and every backup tape.'" *Jenkins*, 2017 WL 362475, at *15 (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003)). Still, a party generally "must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Zubulake*, 220 F.R.D. at 218. "More or less might be required for preservation in unusual cases, but those principles reflect the standard reasonableness framework." *Steves & Sons, Inc.*, 327 F.R.D. at 108.

Here, Worthy admits that he deleted the lost data on his personal tablet and then gave it to his girlfriend. Dkt. 283-4 at 174–80.[2] Even though Worthy provided his personal tablet to Plaintiff's counsel for a forensic analysis in 2022, the record does not support that Worthy took reasonable steps to preserve his personal tablet's data, considering that Worthy deleted the data in 2021 and withheld information about his personal tablet in December 2020 and then again during his March 2022 deposition (although he eventually acknowledged during his deposition that the tablet mounted on his windshield was his personal tablet rather than his GPS tablet).[3]

---

[2] At the hearing on this motion, Defense counsel represented that Worthy recently told them that he had both his GPS and personal tablets in his tractor-trailer at the time of the accident. This information, however, does not support that he took reasonable steps to preserve the data. Worthy should have taken reasonable steps to preserve both tablets because he was on notice through preservation letters that the electronic devices located in his tractor-trailer at the time of accident could be discoverable during the litigation. In addition, it is unclear to the Court why he did not tell his counsel about the existence of both tablets in December 2020 when they showed him a picture of a tablet mounted in the windshield of his tractor-trailer.

[3] Defense counsel argued at the hearing that this situation is like the data in Judy Paul's Kia. The Court disagrees. In February 2022, the Court denied Defendants' motion for sanctions for spoliation against former-Plaintiff Paul because Defendants did not show "by clear and convincing evidence that Paul failed to take reasonable steps to preserve the Kia and its ERD." Dkt. 248 at 7. In support of its finding, the Court noted that following a preservation letter,

*4. Fourth Requirement: Information Cannot be Restored or Replaced*

"Information is lost if it is irretrievable from another source." *Mod. Remodeling, Inc. v. Tripod Holdings, LLC*, No. 19-cv-1397, 2021 WL 3852323, at *8 (D. Md. Aug. 27, 2021) (citing *Steve and Sons, Inc.*, 327 F.R.D. at 107; Fed. R. Civ. P. 37, Comm. Notes on Rules–2015 Amend.). Courts have found that a party has made a good-faith effort to replace or restore ESI when he has issued subpoenas, engaged in forensic analysis, or sent discovery requests encompassing the documents "in an effort to recover what [a party] destroyed." *GMS Indus. Supply, Inc. v. G&S Supply, LLC*, No. 2:19-cv-324, 2022 WL 853626, at *6 (E.D. Va. Mar. 22, 2022); *see also Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 235–36 (D. Minn. 2019); *Jenkins v. Woody*, No. 3:15-cv-355, 2017 WL 362475, at *16 (E.D. Va. Jan. 21, 2017) (finding video data could not be restored or replaced through additional discovery where the plaintiff attempted to copy or mirror the hard drive of the video surveillance cameras and that attempt failed).

In contrast, courts have found insufficient evidence of loss where a moving party, for example, failed to show any attempts to directly retrieve the lost electronic communications. *See Mod. Remodeling, Inc*, 2021 WL 3852323, at *9; *see Steves & Sons, Inc.*, 327 F.R.D. at 109

---

Paul's counsel preserved the Kia, and told Defense counsel to direct all inspection requests of the Kia to Paul's insurance company, GEICO. *Id.* In addition, Defense counsel told Plaintiff's counsel they would "perform a data download" on the Kia, but did not do so at the November 2018 inspection, and failed to communicate a further interest to inspect the Kia before its destruction in April 2019. *Id.* at 8. There was also a debate between the parties' experts on whether the data could even be removed from the Kia. *See id.* at 3–4. The situation surrounding Worthy's personal tablet is different. Unlike Paul's Kia which was preserved by Paul's counsel in 2018, Defendants took no steps to preserve the personal tablet until March 2022 when Worthy revealed which tablet was mounted on his windshield. Dkt. 283-4 at 174–80. Furthermore, Plaintiff's counsel attempted to retrieve the data by asking Defense counsel about the tablet mounted on the windshield several times in December 2020 and were told by Defense counsel that that it was a GPS tablet, which Worthy had sold in 2018. Dkt. 283-1 at 1; Dkt. 283-3 at 1; Dkt. 307-2 at 4.

13

(finding a party "could have taken the obvious step of seeking a forensic examination in this litigation of [] several hard drives, which might have confirmed the impossibility of restoration").

Plaintiff's counsel has made a good faith effort to replace or restore the lost ESI by asking Defense counsel several times about a silver-colored personal computer tablet in December 2020 and by conducting a digital forensic examination of Worthy's personal tablet, which showed that the personal tablet's data prior to June 2021, except for the calendar events' timestamps, had been removed and was unretrievable. Dkt. 283-1 at 1; Dkt. 307-2; Dkt. 283-11 at 4–6.[4]

Accordingly, the Court finds that spoliation occurred, and that Rule 37(e) applies to the lost data on Worthy's personal tablet.

### A. Sanctions under Rule 37(e)

After finding that spoliation occurred under Rule 37(e), the Court may only impose sanctions if it finds *either* (1) prejudice to another party from the loss of information under Fed. R. Civ. P. 37(e)(1) or (2) that the party acted with intent to deprive another party of the

---

[4] Defendants provide two reasons for why this is not lost ESI. First, Worthy stated during his deposition that he did not have cellular service on his personal tablet and that it needed to be used in concert with his phone. Defendants claim that because Plaintiff is in possession of Worthy's cell phone records showing how long Worthy was on his phone, Plaintiff "can ascertain when Worthy was awake and using his phone (and tablet) and when he was not." Dkt. 307 at 12. The cell phone records, however, do not replace the lost personal tablet's data since Worthy could've been using the tablet for several things that would not require cellular service, such as watching a downloaded movie or using a downloaded app. Second, Defendants argue that the "ESI related to Worthy's gaming on the evening prior to the accident cannot be considered lost" because Plaintiff made "zero effort to identify other sources of information from which he might recover this same information." *Id.* at 11. The Court finds that his videogame activity would not be a comparable substitute for his personal tablet's data, which may have reflected that he was using the tablet for other activities besides gaming.

information's use in litigation under Fed. R. Civ. P. 37(e)(2). "The Fourth Circuit has not spoken about the level of intent that a court must find to impose a sanction under Rule 37(e)(2)." *Steves & Sons, Inc.*, 327 F.R.D. at 110. However, "[n]egligent or even grossly negligent behavior" will not satisfy Rule 37(e)(2). *Brittney Gobble Photography, LLC v. Sinclair Bd. Grp., Inc.*, No. 18-cv-3403, 2020 WL 1809191, at *4 (D. Md. Apr. 9, 2020). In determining whether Worthy had the requisite intent to deprive, the Court may consider the entirety of Worthy's "actions, or lack thereof." *Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co.*, No. 15-cv-2926, 2019 WL 5694256, at *11 (E.D.N.Y. July 22, 2019) (inferring an intent to deprive information from the defendants because the plaintiff delayed implementing preservation procedures for three years despite being aware of his duty to preserve the evidence and joked about "throwing out and burning computer backup tapes").

  Here, the record supports by clear and convincing evidence that Worthy acted in bad faith and intentionally deprived Plaintiff of the data on his personal tablet. *See* Fed. R. Civ. P. 37(e)(2).[5] After being shown a picture of the tablet on his tractor-trailer's windshield, Worthy misrepresented to his counsel the true nature of the tablet by referring to it as a GPS tablet. Dkt. 283-2. He also misled Plaintiff's counsel during his March 2022 deposition by initially referring to the tablet as his GPS tablet. Dkt. 283-4 at 171. Moreover, he was not forthcoming during his deposition. For instance, he initially told Plaintiff's counsel that "I still have [the personal tablet] to this day," but then later stated that he had deleted the data on the tablet in early 2021 when he gave it to his girlfriend. *Id.* at 175, 177–78.

  Worthy's act of deleting the data on his personal tablet further supports that he acted to

---

[5] Sanctions under Rule 37(e)(2) are available regardless of whether there is shown prejudice. *See* Fed. R. Civ. P. 37, Comm. Notes on Rules–2015 Amend.

15

intentionally deprive Plaintiff of this information. In December 2020, Worthy was put on notice that Plaintiff's counsel was seeking the tablet because Defense counsel showed him a picture sent by Plaintiff's counsel, which depicted a silver tablet in his windshield. Dkt. 283-2. After being on notice that Plaintiff's counsel was seeking the tablet mounted in his windshield, he deleted the data on his personal tablet and gave it to his girlfriend in early 2021. Dkt. 283-4 at 177–78. Thus, he deleted his personal tablet's data after—and within several months of—learning that Plaintiff's counsel was attempting to collect data on the tablet mounted on his windshield.

After "finding a party acted with the intent to deprive another party of the information's use in the litigation," a court may "[1] presume the information was unfavorable, [2] instruct the jury that it may or must presume the information was unfavorable, or [3] dismiss the action or enter a default judgment." *Mod. Remodeling, Inc.*, 2021 WL 3852323, at *15 (citing Rule 37(e)(2)). As provided in the 2015 Amendment to Rule 37, courts "should exercise caution" in using the sanctions under Rule 37(e)(2). "The remedy should fit the wrong, and the severe measures authorized by this subdivision should not be used when the information lost was relatively unimportant or lesser measures . . . would be sufficient to redress the loss." Fed. R. Civ. P. 37, Comm. Notes on Rules–2015 Amend. District courts have "broad discretion in choosing an appropriate sanction for spoliation," but the sanction imposed should "serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Silvestri*, 271 F.3d at 590 (internal quotation marks omitted).

To redress this loss, the Court finds that a permissive adverse inference instruction against Worthy is proportionate to the prejudice and harm experienced by Plaintiff. The Court will thus instruct the jury that it is permitted, although not required, to presume that the lost data

16

on Worthy's personal tablet was unfavorable to Worthy.

## Conclusion

For the above reasons, the Court **GRANTS** Plaintiff's motion for sanctions, Dkt. 282, and finds that a permissive adverse inference instruction against Worthy is warranted at trial. The parties may submit proposed language for such instruction by 5:00 p.m. on Tuesday, April 11, 2023.

It is so **ORDERED**.

The Clerk of Court is directed to send this Memorandum Opinion and Order to all counsel of record.

Entered this 7th day of April, 2023.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE